**UNITED STATES of America, Plaintiff–Appellee,**

v.

**George HARVEY, Defendant–Appellant.**

**No. 90–3569.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1991.

Decided March 10, 1992.

Brenda Atkinson (argued), Crim. Div., Barry R. Elden, Asst. U.S. Attys., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Standish E. Willis, Chicago, Ill. (argued), for defendant-appellant.

Before EASTERBROOK, RIPPLE, and MANION, Circuit Judges.

MANION, Circuit Judge.

George Harvey called himself a "loan broker." Several potential borrowers paid Harvey substantial sums "up front" supposedly to enable him to line up loans from off-shore lenders. Although Harvey kept the front money, the borrowers never received the loans. Harvey was charged and convicted of several offenses, including mail and wire fraud. He appeals all convictions. We affirm.

## I.

During 1985 and 1986, four people, all desperate to borrow money and unable to obtain credit from conventional sources such as banks, turned to Harvey, a self-styled "loan broker." Despite assurances that he had access to almost unlimited funds, Harvey was unable to obtain loans for any of his "clients." Harvey insists that his failure to obtain the promised loans was due to nothing more than the vagaries of the loan-brokering business. A federal grand jury disagreed, and charged Harvey with scheming to defraud his "clients" in violation of the mail and wire fraud statutes, as well as tax evasion and several other criminal offenses.

At trial, the government introduced testimony from all four of Harvey's alleged victims. This testimony showed that Harvey's dealings with each of them followed the same general pattern. Harvey would meet with a person needing money and unable to obtain it from other sources. Harvey would tell the potential borrower that he represented a consortium of wealthy people (generally, traders and brokers in Chicago's commodity exchanges) who had funnelled money into a Bahamian corporation for tax purposes and were looking to reinvest the money by making loans in the United States. According to Harvey, this consortium provided access to virtually unlimited funds, so that obtaining a loan

would be no problem. Often accompanying Harvey at meetings with potential borrowers was Charles Gibson, whom Harvey referred to as his "assistant" and "leg person." Gibson's primary role in Harvey's scam was to stay in contact with borrowers after initial meetings with him and Harvey.

Harvey always requested an advance fee from potential borrowers. Typically, Harvey requested $30,000 although in some cases he settled for less and in one case asked for and received more. Harvey deposited the advance fees in escrow accounts from which he could draw funds as needed (or wanted). Harvey told potential borrowers that he would refund the advance fee (or the unused portion of the fee) if he was unable to obtain a loan.

As it turned out, the consortium of investors Harvey claimed to represent did not exist. Harvey never obtained any of the loans he promised to obtain. Nor did he refund any of the advance fees. Instead, Harvey converted this money to his own use, leaving the victims without the needed loans or the money they advanced to Harvey.

## II.

Harvey's primary defense at trial was that he honestly believed he could obtain loans for his "clients" and that he made good-faith efforts to obtain those loans. The jury nevertheless convicted Harvey on all counts. Harvey raises several issues on appeal.

### Evidence of Harvey's Dealings With George Jubiter

■ As we noted, the government introduced testimony from four people who fell prey to Harvey's scheme during 1985 and 1986. The indictment, however, charged mailings and wirings relating to only three of the victims. Harvey contends that the district court erred by admitting the testimony of George Jubiter, the fourth victim. According to Harvey, that testimony was evidence of another crime prohibited by Fed.R.Evid. 404(b).

Evidence of other crimes is inadmissible to show that a defendant has a bad charac-

ter and that he acted consistently with that character. Fed.R.Evid. 404(b); see *United States v. Monzon*, 869 F.2d 338, 344 (7th Cir.1989). But evidence of other crimes is admissible to prove some other fact at issue in the case, such as the defendant's intent or the absence of accident or mistake. Fed.R.Evid. 404(b). Harvey's dealings with Jubiter followed substantially the same pattern as his dealings with his other victims: Jubiter needed a loan, Harvey posed as a representative of a consortium with money in the Bahamas to make the loan, Jubiter paid Harvey an advance fee that was supposedly refundable, and Jubiter received neither a loan nor a refund. Harvey's dealings with Jubiter also occurred during the same general time period as his dealings with the other victims. This similarity and temporal proximity raises the inference that Harvey's dealings with Jubiter and the other three victims were all part of a common scheme. This, in turn, raises an inference that Harvey's failures to obtain loans or refund advance fees were intentional, rather than the result of accident or bad luck. Cf. *United States v. Beasley*, 809 F.2d 1273, 1278 (7th Cir.1987) (patterns of similar acts may show intent).

Since Harvey's intent to defraud his victims was an issue in this case, Jubiter's testimony was logically relevant because it tended to make it more likely that Harvey acted with fraudulent intent. See Fed. R.Evid. 401. Jubiter's testimony was admissible under Rule 404(b) so long as the danger of unfair prejudice did not substantially outweigh the testimony's probative value regarding Harvey's intent. See Fed. R.Evid. 403; *United States v. Draiman*, 784 F.2d 248, 254 (7th Cir.1986); cf. *Beasley*, 809 F.2d at 1279. The danger of unfair prejudice here was slight; after all, the jury heard testimony from three other victims whom Harvey allegedly defrauded. Jubiter's testimony may have strengthened the inference that Harvey was not dealing honestly with the other three victims, but that inference was a proper one to suggest. Moreover, the district court instructed the jury to consider Jubiter's testimony only as evidence of a preexisting scheme and of

Harvey's intent to defraud the other three victims. The district court did not abuse its discretion in admitting Jubiter's testimony.

### District Court's Failure to Admit Travel Vouchers

Harvey complains that the district court erred by refusing to admit documents that he refers to as "travel vouchers." Several government witnesses (including two of Harvey's victims) testified that Harvey said he would have to travel to meet with lenders. Harvey asserts that the travel vouchers would have shown that he actually did travel which, in turn, would have supported his defense that he honestly believed he could procure the loans he promised and that he made a good-faith effort to procure those loans.

Before trial, the government filed a motion in limine seeking to bar as irrelevant any evidence regarding attempts Harvey may have made to procure loan funding from sources other than the consortium he claimed to represent. Harvey filed a response that asserted that evidence of his attempts to procure loans from any source was relevant to his good-faith defense; the response referred generally to "evidence of [Harvey's] travels" but did not mention or describe the travel vouchers or any other specific evidence. The district court granted the government's motion in limine. Harvey does not point to any place in the record showing that he ever attempted to introduce the travel vouchers or offer any more detail about them at trial, and we have found no reference in the record to those vouchers.

 The government argues that Harvey has waived the issue concerning admission of the travel vouchers because he did not offer the travel vouchers' substance for the district court's consideration as Fed. R.Evid. 103(a)(2) requires. We agree. Harvey cannot complain about the district court's "decision" to refuse to admit evidence that he never moved to admit, or even attempted to describe. Harvey relies on his response to the government's motion in limine to show that he sought to admit

the travel vouchers, but that response was too vague to preserve the issue of the travel vouchers' admissibility. Even if evidence of Harvey's efforts to procure funds from sources other than the consortium he claimed to represent were relevant, Harvey's response did not even mention travel vouchers, much less explain what those vouchers were or how those vouchers would show that his travels might be connected to any attempts to procure loan funds. Harvey's response hardly placed the travel vouchers' "substance" before the district court. Thus, Harvey has waived the issue of the travel vouchers' admissibility.

■ Moreover, we agree with the district court and the government that evidence of Harvey's attempts to procure funds from sources other than the consortium he claimed to represent was irrelevant. There is a "distinction between an honest belief in ability to perform and good faith, though ultimately unfulfilled, representations." *United States v. Alexander*, 743 F.2d 472, 478 (7th Cir.1984). Harvey told his victims that he represented a specific group of people that provided almost unlimited access to funds. Obtaining loans from those people, according to Harvey, would be no problem. If those statements were false, and Harvey did not in good faith believe they were true, his belief that he could procure funds from other sources, and his effort to do so, were no defense. See *id.* at 479; *United States v. Stull*, 743 F.2d 439, 446 (6th Cir.1984); *United States v. Black*, 684 F.2d 481, 484 (7th Cir.1982). Even if Harvey's response to the motion in limine was sufficient to alert the court that he wanted to introduce some kind of documentary evidence to show he traveled to obtain funds, it was not specific enough to show that he was attempting to obtain those funds from the consortium he claimed to represent. By that lack of specificity, Harvey has either waived the issue of the travel vouchers' admissibility or made it impossible to say the district court abused its discretion by not admitting the vouchers. Either way, Harvey loses on this issue.

### Limitation of Cross–Examination of Postal Inspector Tendick

United States Postal Inspector James Tendick testified for the government about an interview he had conducted with Harvey in 1988 and statements Harvey made during that interview. During cross-examination, Harvey's lawyer attempted to elicit what he describes as exculpatory statements that Harvey made during the interview. The district court sustained the government's objection to that cross-examination in large part, and did not allow Harvey's lawyer to elicit most of the statements he sought.

■ Harvey argues that the district court erred by limiting his cross-examination of Tendick. First, however, Harvey must show that the statements he sought to elicit were admissible. He has not done that. Harvey complains principally about the district court's refusal to allow his lawyer to ask Tendick about Harvey's statement that he thought his funding sources were "hustlers." But the statement was hearsay because it was offered to prove the matter asserted: that Harvey thought his funding sources were "hustlers." See Fed. R.Evid. 801. Federal Rule of Evidence 803(3) does exclude from the hearsay rule statements "of the declarant's then existing state of mind...." To be admissible under Rule 803(3), however, a statement must be made under circumstances showing that the declarant had no time to reflect and perhaps misrepresent his thoughts. *United States v. Jackson*, 780 F.2d 1305, 1315 (7th Cir.1986). Moreover, even if the evidence falls into the hearsay exception, it must also be relevant to an issue in the case. *Id.* The relevant issue in this case was Harvey's intent when he promised loans to his victims in 1985 and 1986. His statement to Tendick was made more than two years later, giving him ample time to fabricate a reason to explain why his victims never received loans. Moreover, it is not readily apparent how Harvey's statement about his loan sources was relevant to his intent or lack of intent to defraud, and Harvey does not explain why it is relevant. Therefore, it was prop-

er to exclude the statement on the grounds that it was hearsay and that it was irrelevant.

■■■ Harvey suggests that the district court should have admitted the statement under the common law rule of completeness, codified in Fed.R.Evid. 106. That rule provides that when

> a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Harvey faces two problems. First, Tendick was testifying about Harvey's oral statements. Rule 106, however, applies only to written and recorded materials. Fed. R.Evid. 106, Advisory Committee Note; *United States v. Bigelow*, 914 F.2d 966, 972 (7th Cir.1990). Second, the portion of any statement admitted under Rule 106 must be relevant and is limited to the parts of a statement that qualify or explain the subject matter of the part the opponent offered. *United States v. Walker*, 652 F.2d 708, 710 (7th Cir.1981). As we have noted, Harvey does not explain how the statement to Tendick about his sources being hustlers is relevant to his lack of intent to defraud his victims. Moreover, Harvey does not explain how the statement qualifies or explains any testimony the government elicited from Tendick on direct examination.

Harvey also complains about other statements that the district court refused to allow him to elicit from Tendick that he states generally were relevant to his good faith defense. However, Harvey does not tell us what those statements were, much less explain how they supported his defense. His skeletal "argument," which is really nothing more than an assertion, does not preserve his claim that the district court erred by refusing to allow him to question Tendick about these statements. See *United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir.1990); *United States v. Williams*, 877 F.2d 516, 518 (7th Cir.1989).

### Admission of Gibson's Statements

Several witnesses testified about statements Gibson made. Harvey argues that those statements were inadmissible hearsay. However, Harvey has not bothered to specify which of Gibson's statements the district court may have erred in admitting. Because of this, Harvey has waived this issue on appeal. See *United States v. Acosta*, 763 F.2d 671, 680 (5th Cir.1985).

■■■ In any event, Harvey's argument is meritless. The district court allowed testimony about Gibson's statements as statements of a coconspirator. See Fed.R.Evid. 801(d)(2)(E). Under Rule 801(d)(2)(E), a coconspirator's statements made during the conspiracy to further the conspiracy are not hearsay. Harvey argues that there was insufficient evidence to show that he and Gibson conspired. He is wrong. Harvey himself described Gibson as his assistant. Gibson was often present at meetings between Harvey and his victims; in fact, he set up Harvey's initial meeting with Jubiter. Finally, Gibson took an active part in advancing the scheme by, among other things, signing documents, negotiating advance fees, soliciting additional money from victims, and contacting victims. In short, there was ample evidence to support the district court's finding that Harvey and Gibson conspired to defraud Harvey's victims, so that Gibson's statements made to further the conspiracy were admissible under Rule 801(d)(2)(E).

### Failure to Grant Continuance

■■■ Harvey wanted to call Charles Rice, with whom Gibson had lived, as a witness. Rice allegedly knew Harvey and had knowledge of the relationship between Harvey and Gibson. According to Harvey, Rice could have corroborated Harvey's good faith defense as well as rebutted the government's contention that Harvey and Gibson were coconspirators. Unfortunately, Rice had a serious heart condition. At the beginning of trial, Harvey thought Rice would be able to testify despite his condition. However, Rice's health took a turn for the worse and he was unable to testify. Harvey's lawyer told the trial judge of his

desire to have Rice testify and explained that Rice could not testify because of his health problems. Harvey's lawyer also explained to the judge what he anticipated Rice would testify about. All that done, Harvey went on to call two more witnesses and then rest his case.

Harvey now argues that the district court should have continued the trial until Rice was available to testify. But Harvey has waived this claim because he never asked the district court for a continuance. If Harvey wanted a continuance, he should have asked for it. Not hearing a motion for continuance, and seeing Harvey go ahead with and ultimately rest his case, the trial judge could reasonably have concluded that Harvey decided he could go on without Gibson's testimony. Having failed to ask for a continuance, and having now lost, Harvey "may not pull a rabbit out of his pocket" and seek reversal based on a motion he never filed. Cf. *United States v. Taglia*, 922 F.2d 413, 416 (7th Cir.1991).

*Denial of New Trial Motion*

The district court sentenced Harvey on November 7, 1990. Harvey filed his notice of appeal the same day. Sometime after that, Harvey filed a motion for a new trial based on newly discovered evidence. See Fed.R.Crim.P. 33. The district court denied that motion, a decision Harvey contends was erroneous. But Harvey never filed a separate notice of appeal from that decision. When a district court denies a motion for new trial while an appeal from the underlying judgment is pending, a separate, timely notice of appeal "is a jurisdictional predicate to appellate review" of the denial of the new trial motion. *United States v. Douglas*, 874 F.2d 1145, 1162 (7th Cir.1989). Because Harvey never filed a notice of appeal from the district court's decision to deny his new trial motion, we have no power to review that decision. *Id.*

For the reasons stated above, we affirm Harvey's conviction.

AFFIRMED.