**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ted BELL, Defendant–Appellant.**

**No. 91–3271.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1992.

Decided Nov. 25, 1992.

Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Diane MacArthur (argued), Chicago, Ill., for plaintiff-appellee.

Donald V. Young, Young & Associates, Chicago, Ill. (argued), for defendant-appellant.

Before BAUER, Chief Judge, FLAUM, Circuit Judge, and WOOD, Jr., Senior Circuit Judge.

FLAUM, Circuit Judge.

After a jury trial, Ted Bell was convicted of four counts of knowing and unlawful production of false identification documents and one count of possession of a document-making implement with the intent to produce false identification documents. He appeals from his conviction, arguing that trial errors denied him a fair trial. We affirm.

I.

Between January 23 and February 25, 1986, Secret Service Special Agent Ed Thompson bought seventeen identification cards under nine different names from Ted Bell. A year later, Agent Alfred Waterford bought seven identification cards under seven different names from Bell during two visits to Ted Bell Studios. Eight of the twenty-four cards purported to be Illinois identification cards, one of which bore the disclaimer "Not issued by any government agency." The other sixteen cards carried different corporate logos or names, purporting to be employee identification cards. At each visit, the agents chose their pseudonyms from credit cards and treasury checks they carried with them. After the identification cards were made, the agents compared them, in Bell's presence, with the names on the checks and credit cards. On one occasion, Bell's assistant helped Agent Waterford check the cards for accuracy against treasury checks while Bell stood next to her.

The Illinois Secretary of State is responsible for the production of Illinois identification cards. No one may produce the cards without the authorization of the Secretary of State. Bell was charged with, and convicted for, making the Illinois identification cards that appear to be issued under the authority of the State of Illinois.

II.

According to Bell, his right to a fair trial was compromised from the very beginning; his first argument stems from a remark made by the prosecutor in her opening statement. After explaining to the jury that Bell was charged with making false Illinois identification cards, the prosecutor stated,

Although the defendant produced false identification on occasions other than those charged in the indictment, he is not charged with criminal conduct in connection with those identification cards....

Tr. at 34. At this point, the defendant objected to the "reference to [uncharged] criminal conduct." The court, apparently accepting that characterization of the prosecutor's statement, stated that there would be no evidence admitted to support the statement and directed the prosecutor to proceed. The government immediately clarified its statement by explaining that only producing false Illinois identification was a crime; the employee identification cards produced for Agents Thompson and Waterford bore false names but were not actionable under the relevant statute.

The reversal of a conviction on the basis of a prosecutor's remarks in an opening statement requires a finding that the re-

marks were both improper and " 'affected the fairness of the trial.' " *United States v. Mealy*, 851 F.2d 890, 903 (7th Cir.1988), *quoting United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985). In this case, the remark itself was not improper because, as promptly explained to the jury, it did not refer to uncharged criminal conduct. While the wording may have been inartful, the prosecutor merely directed the jury's attention to which identification cards, among the many about which the agents would testify, evidenced criminal conduct by the defendant. Any ambiguity in the remark did not harm the defendant because of the immediate clarification.

█ Moreover, the trial court's response to the objection did not render the remark improper or harmful. The court's short statement that no evidence would be admitted to support the prosecutor's "prediction" did not confirm any implication of uncharged criminal conduct. In addition, the jury had been instructed, only a few minutes before the prosecutor's remark, about the purpose of opening statements and the possibility that the evidence might not fit the lawyers' "predictions." No additional instruction was needed.

█ Bell argues next that his right to a fair trial was prejudiced by the improper inclusion of certain items recovered from his studio in a stipulation read to the jury. The list of items, admitted by stipulation pursuant to an oral agreement, included birth certificate formats, California identification formats, and firearm owners identification formats. Bell objected as the list was read and, during a sidebar conference, he denied having agreed to some of the items, mentioning the California format and the reference to guns in particular. He moved for a mistrial. The court reserved ruling and told the jury that the stipulation was in error and would be corrected the next day. At the end of the day, Bell expressed his objection to "the birth certificates, the gun cards, [and] the so-called fake California" identification cards. Tr. at 314. He renewed his motion for a mistrial, which was denied. The following

morning, the court instructed the jury that the stipulation had been amended and now contained the items that "properly may be put in evidence." Tr. at 393. The new list included birth certificates but not California identification formats or firearm owners identification formats.

The defendant argues that the trial court erred in failing to grant a mistrial based on the prejudicial stipulation read to the jury. According to Bell, the list exceeded the agreement between the parties and it also violated an earlier ruling *in limine* regarding wiretap tapes and the transcripts of those tapes, that references to social security cards and birth certificates must be excluded from evidence. We review the denial of a motion for mistrial under an abuse of discretion standard. *United States v. Morrison*, 946 F.2d 484, 493 (7th Cir.1991). The court instructed the jury that the second list included the properly admitted evidence, agreed to by the parties. Later the jury was instructed to consider only the evidence in the case, and to disregard offered evidence that is excluded after an objection. In addition, nothing in the way the government read the lists highlighted the documents that had been included erroneously. Any minimal prejudice suffered by Bell did not compel the trial court to grant a mistrial. As for the ruling *in limine*, Bell waived any argument about violating it because both stipulations, including the corrected one to which he agreed, included birth certificates.

█ Bell's third and fourth arguments concern the testimony of a government witness. He claims that during Special Agent Charles DuShane's testimony, two prejudicial references were made to uncharged criminal conduct, which deprived him of his right to a fair trial. Among a series of foundational questions, the prosecutor asked Agent DuShane why the defendant's studio was being investigated, and the agent referred to "[n]umerous contacts with law enforcement agencies." The defendant objected, and the court sustained the objection. The prosecutor then asked several other questions about background information, and the witness' testimony

continued without further problems until the redirect examination. Responding to a question about the relative importance of noticing details of the defendant's clothing at his arrest, Special Agent DuShane testified that once Bell had been observed wearing a shoulder holster under a smock. The defendant objected, and the court struck the testimony and instructed the jury to disregard it. Later, the court denied a motion for mistrial based on the reference to the shoulder holster.

Initially we note that the district court sustained objections to both statements, and therefore the statements were not evidence. The jury had been instructed before the trial began, and was again instructed after the trial, to consider only admitted evidence. We presume that juries abide by the court's instructions. *See United States v. McKinney*, 954 F.2d 471, 478 (7th Cir.1992). Bell has not shown that Agent DuShane's remarks were so prejudicial that they compel a reversal of his conviction. There is no evidence of prosecutorial misconduct, no physical evidence supported the statements, and each remark was immediately cut short by the court's ruling on the defendant's objection. In addition, the admitted evidence strongly supported the jury's verdict. The government witness' testimony did not compromise Bell's right to a fair trial.

■ Finally, Bell argues that the government improperly introduced evidence that Bell's activities were a violation of Illinois law, besides violating the federal statute under which he was charged. In order to establish that Bell did not have the authority to manufacture Illinois identification cards, an employee of the Illinois Secretary of State's Office testified about the delegation of that authority. After an objection by the defendant, the judge ruled at sidebar that the witness could testify about the Secretary of State's authorization, but that any violation of Illinois law was irrelevant. The federal statute requires proof that the production of the state identification cards is "without lawful authority." 18 U.S.C. § 1028(a)(1). This the government proved with the testimony of the Illinois Secretary

of State's Office employee. The jury may have concluded that, by producing the cards without authority, Bell violated an Illinois law, too. The district court, however, refused to instruct the jury on Illinois law or to permit the introduction of any Illinois statute. Any incidental prejudice suffered by the defendant is outweighed by the probative value of the state employee's testimony on an element of the government's case.

Because none of Bell's arguments warrants reversal, his conviction is

AFFIRMED.