In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2904

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KEITH D. DENBERG,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 98 CR 64--Robert L. Miller, Jr., Judge.

Argued January 20, 2000--Decided May 9, 2000

Before COFFEY, MANION and ROVNER, Circuit Judges.

COFFEY, Circuit Judge.  On November 12, 1998, a
federal grand jury sitting in the Northern
District of Indiana returned a four-count
indictment against Keith D. Denberg./1 After
count three was dismissed upon motion of the
government, a jury found Denberg guilty of the
remaining counts, and the judge sentenced him to
365 months' imprisonment and eight years'
supervised release on count two, and 120 months'
imprisonment and five years' supervised release
on counts one and four; all sentences to run
concurrently and concurrent with each other.
Denberg was also assessed a $300 special
assessment and ordered to enter a drug aftercare
treatment program. On appeal, Denberg challenges
the authority of the police to enter his home as
well as evidence the district court admitted at
his trial. We affirm.

I.  BACKGROUND

In February 1998, Denberg was living with his
girlfriend, Laura Ward, at 29203 U.S. 33 in
Elkhart, Indiana, but the relationship appeared
to have become quite strained because shortly
after midnight on February 23, 1998, police
received a 911 call regarding domestic violence
at their house. Upon arriving, the police found
Laura Ward outside panicked, crying, and clothed
in only a nightgown. She also had red marks on

her face evidencing the fact that she had been recently struck. Ward told police that Denberg was still inside the house and that he had "battered her" and "grabbed her by the hair and pulled out a large amount of hair from her head." She also told police that her two children were still inside the house and she wanted to get the children out of the house.

A police officer entered the house at 29203 U.S. 33 through an unlocked door, and immediately saw one of Ward's two children (her son) sleeping on a mattress and observed Denberg near a computer talking on the phone with a police dispatcher telling the dispatcher that police were not needed. Denberg, who was dressed in underwear and a t-shirt, told police he had been asleep in bed until the phone rang, and offered to have the officer go down to his bed and touch it to see if it was still warm. While talking to Denberg in the living room, the officer noticed drug paraphernalia and what appeared to be a half-burned marijuana cigarette. The officer then asked Denberg if he wanted to put some clothes on and he replied in the affirmative. Another officer then followed Denberg down to his bedroom area and allowed him to get dressed. While downstairs with Denberg, the officer observed a bag of marijuana (Denberg told the officer that the marijuana was for his personal use) as well as a handgun in plain view on the dresser near the bed. Police also observed a young girl, approximately 4-6 years old (Ward's daughter), and a loaded AK-47 type weapon in plain view within the bedroom where the child was sleeping. Thereafter, police officers escorted Denberg outside and placed him in a police car.

During this time, Ward was being interviewed while waiting in another police car, and while Denberg was in another squad car, she was taken into the house in order that she might get dressed. Officers saw piles of women's clothing near the washer and dryer, which Ward rummaged through to find clothing to put on. While downstairs with Ward, officers observed still another firearm as well as additional drug paraphernalia. Police then asked Ward for permission to search the house and she gave that permission, both orally and in writing.

Upon searching the premises, officers found additional loaded firearms, drug paraphernalia including marijuana bongs, and a gun cabinet. Inside the gun cabinet, the officers discovered a plastic bag filled with more than 57 grams of methamphetamine, more than $8,000 cash, and yet more loaded firearms.

An Elkhart County Drug Task Force detective

arrived at the house while officers continued the search pursuant to Ward's consent. Upon questioning by the detective, Ward gave conflicting statements as to how long she had lived in the house, first it was eight months and then she stated it was eight days. Based on Ward's conflicting statements, a decision was made by the supervisor of the Elkhart County Drug Task Force that a warrant to search the house should also be obtained. The search pursuant to Ward's consent was then halted and a search warrant was obtained.

Before trial, Denberg moved to suppress the evidence seized by the government after a warrantless initial search of his residence. The judge, however, denied the motion to suppress, finding that Denberg's girlfriend, Ward, who lived at Denberg's residence, had consented to the search of the property.

Undeterred by the denial of his motion to suppress, Denberg went to trial and, on March 22, 1999, Denberg filed a motion in limine to exclude testimony of two witnesses, Adam Motheral and Charles Eutsey, regarding "other acts" in connection with his prior methamphetamine deals (not charged in the indictment) between him and the two men./2 The district court denied his motion in limine, concluding that the evidence was admissible under Rule 404(b).

## II. ISSUES

Denberg challenges: 1) the denial of his motion to suppress, arguing that the police were without the authority to conduct the warrantless search of his home; and 2) the district court's decision to admit evidence of prior drug transactions between him and Motheral and Eutsey, arguing that the narcotics transactions between himself and Motheral and Eutsey were not charged in the indictment, and thus any evidence concerning those transactions was erroneously admitted.

## III. ANALYSIS

### A. Motion To Suppress

#### 1. Standard of Review

In reviewing the district court's denial of the motion to suppress, we review questions of law de novo and review factual findings for clear error. See United States v. Strache, 202 F.3d 980, 984 (7th Cir. 2000). A factual finding is clearly erroneous "when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made." United States v. Gravens, 129 F.3d

974, 978 (7th Cir. 1997), cert. denied, 118 S. Ct. 1333 (1998). Because the resolution of a motion to suppress is fact-specific, we accord special deference to the trial court, which heard the testimony and had the opportunity to observe the witnesses at the suppression hearing. Id. (citing United States v. Stribling, 94 F.3d 321, 323 (7th Cir. 1996)).

2.  Validity of the Consent to Search

Denberg asserts that the search of his home was unlawful and that the evidence seized should therefore be suppressed because Ward did not have authority to consent to a search of the premises because she did not, in fact, live there./3

"Although the Fourth Amendment generally prohibits searches and seizures performed without a warrant, there is an exception when someone with actual or apparent authority consents to the search or seizure." United States v. Aghedo, 159 F.3d 308, 310 (7th Cir. 1998). "[T]he consent of one who possesses common authority over [the] premises . . . is valid as against the absent, nonconsenting person with whom that authority is shared." United States v. Matlock, 415 U.S. 164, 170 (1974); see also United States v. Rosario, 962 F.2d 733, 736 (7th Cir. 1992); United States v. Duran, 957 F.2d 499, 503 (7th Cir. 1992). The Supreme Court explained in Matlock that common authority "rests . . . on the mutual use of the property by persons generally having joint access or control for most purposes." Matlock, 415 U.S. at 171 n. 7. Furthermore, "[u]nder the Fourth Amendment, consent to a search may be obtained [from] any person who has common authority over the property." United States v. Booker, 981 F.2d 289, 294 (7th Cir. 1992). Additionally, the government has the burden of establishing that Ward had the required common authority to consent to a search. See Illinois v. Rodriguez, 497 U.S. 177, 181 (1990).

The district court did not commit clear error in determining that Ward had actual authority to consent to the search by the officers because, contrary to Denberg's contentions, we are convinced that there is sufficient evidence in the record that Ward lived in the home.

Initially, Ward told officers she lived on the premises and she signed a sworn affidavit on the morning of February 23, 1998, stating that she lived at 29203 U.S. 33 in Elkhart, Indiana. Additionally, Ward's driver's license indicated that 29203 U.S. 33 was her legal residence. Furthermore, Ward received mail and bills at the 29203 U.S. 33 residence. Ward also paid rent,

along with Denberg, at times for the 29203 U.S. 33 home. Her clothing, two children, the children's toys, her diary, as well as her cat were all in the home on February 23, 1998. See Aghedo, 159 F.3d at 310 (storage of clothing can be relevant to the question of actual authority).

Not only did Ward tell the police that she lived at the home, but Denberg initially informed police officers that he and Ward had been living together since June or July 1997 and that they had been living at the 29203 U.S. 33 residence since August 1997. It is interesting to note that when the police informed Denberg that Ward would give them consent to search the residence, Denberg did not object. See id. (The failure to object to a party giving consent undercuts any later assertion that the party did not have adequate authority to give consent.); United States v. Saadeh, 61 F.3d 510, 518 (7th Cir. 1995) (same).

Given the information previously referred to herein, we agree with the trial judge that Ward had actual authority to consent to the search of the residence at 29203 U.S. 33, and hold that he did not commit clear error in denying the motion to suppress./4

B. Motion in limine to exclude "other acts" evidence under Fed. R. Evid. 404(b)

1. Standard of Review

We review the district court's decision to admit the disputed evidence for an abuse of discretion. United States v. Flores, 5 F.3d 1070, 1080 (7th Cir. 1993). "The district court's determination of the admissibility of evidence 'is treated with great deference because of the trial judge's first-hand exposure to the witnesses and the evidence as a whole, and because of his familiarity with the case and ability to gauge the likely impact of the evidence in the context of the entire proceeding.'" United States v. Curry, 79 F.3d 1489, 1495 (7th Cir. 1996) (quoting United States v. Torres, 977 F.2d 321, 329 (7th Cir. 1992)).

Denberg also asserts that the admission into evidence of the testimony of "other acts" evidence not charged in the indictment from Motheral and Eutsey violated Fed. R. Evid. 404(b) and Fed. R. Evid. 403./5

The 4-prong test for admissibility of Rule 404(b) evidence is whether:

(1) the evidence is directed toward establishing a matter in issue other than the defendant's

propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice.

United States v. Gibson, 170 F.3d 673, 678 (7th Cir. 1999); see also United States v. Lloyd, 71 F.3d 1256, 1264 (7th Cir. 1995). In "weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission." United States v. Dennis, 625 F.2d 782, 797 (8th Cir. 1980) (citations omitted). See also United States v. Candelaria-Silva, 162 F.3d 698, 705 (1st Cir. 1998) ("Rule 403 tilts the balance in favor of admission"); United States v. Aramony, 88 F.3d 1369, 1378 (4th Cir. 1996) ("the balance under Rule 403 should be struck in favor of admissibility").

On appeal, Denberg challenges the judge's decision to admit the evidence on the first and fourth prongs (the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged and the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice); he concedes that the evidence demonstrates that the other acts are similar enough and close enough in time to be relevant and that the evidence is sufficient to support a finding that he committed the similar acts (the second and third prongs)./6

On appeal, Denberg argues that "the danger was high, if not an actuality, that the jury could not and would not separate the purpose of their consideration of the 'other acts' from their consideration of the guilt or innocence of Mr. Denberg as to the crimes with which he was actually charged." Denberg's other argument is that because the "Government offered ample circumstantial evidence in the issue of intent" the introduction of evidence from Motheral and Eutsey was unfairly prejudicial.

2. Propensity to commit the crime

With regard to the first prong, whether the evidence from Motheral and Eutsey was directed toward establishing a matter in issue other than Denberg's propensity to commit methamphetamine distribution, we are of the opinion that Denberg's "high danger" argument is without merit.

First and foremost, Denberg was charged with a specific intent crime (possession of methamphetamine with intent to distribute) where the government was required to prove beyond reasonable doubt that Denberg possessed the more than 57 grams of methamphetamine seized on February 23, 1998, with the intent to distribute that methamphetamine. This court has long held that it is proper to use other acts evidence to establish intent. See United States v. Chaimson, 760 F.2d 798, 808 (7th Cir. 1985). See also United States v. Long, 86 F.3d 81, 84 (7th Cir. 1996) ("[w]hen a defendant is charged with a specific intent crime, the government may present other acts evidence to prove intent"); United States v. Harvey, 959 F.2d 1371, 1374 (7th Cir. 1992) (similar acts show intent); United States v. Neely, 980 F.2d 1074, 1088 (7th Cir. 1992).

In particular, this court has held that proof of uncharged acts of drug trafficking are "relevant and probative of whether [the defendant] had the intent to sell the narcotics in question." United States v. Allison, 120 F.3d 71, 75 (7th Cir. 1997), cert. denied, 118 S. Ct. 455 (1997); United States v. Hernandez, 84 F.3d 931, 935 (7th Cir. 1996) (evidence of other drug trafficking was relevant to show defendant's intent to distribute the drugs he possessed). For example, in United States v. Lewis, 110 F.3d 417, 420 (7th Cir. 1997), the defendant was charged under 21 U.S.C. sec. 846 with being part of a drug trafficking conspiracy. This court held that the defendant was charged "with a specific intent crime and the admission of the other crimes evidence for the limited purpose of proving knowledge and intent was proper." Id. In United States v. Tringali, 71 F.3d 1375, 1379 (7th Cir. 1995), this Court held that the admission of evidence of the defendant's other drug trafficking specifically for the purpose of demonstrating the defendant's knowledge and intent was proper. In this case, the evidence of Denberg's prior drug trafficking activities demonstrated his knowledge, experience, ability, and intent to traffic in significant quantities of narcotics. The evidence was properly admitted under the first prong of the test.

3.  Unfair prejudice

With regard to the fourth prong, Denberg argues that the district court abused its discretion in permitting the reception in evidence of Motheral's and Eutsey's testimony regarding this other acts evidence (prior drug deals not charged in the indictment) because the probative value of the evidence was substantially outweighed by the

unfair prejudice in admitting the testimony of the two men. As we have repeatedly stated, "relevant evidence is, by its very nature, prejudicial, and that evidence must be unfairly prejudicial to be excluded. Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." Long, 86 F.3d at 86 (emphasis added).

Motheral's and Eutsey's testimony concerning Denberg's methamphetamine distribution in late 1997 and early 1998 was, as Denberg admitted, but a small part of a considerable "volume" of evidence offered by the government. The danger of unfair prejudice from the admission of the "other acts" evidence was slight when compared to the very important probative value of establishing that Denberg was involved in ongoing methamphetamine distribution. Additionally, it is important to note that the trial judge gave several detailed limiting instructions concerning the testimony of Motheral and Eutsey,/7 and this court has held many times that limiting instructions are effective in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence. See, e.g., United States v. Brooks, 125 F.3d 484, 500 (7th Cir. 1997) ("limiting instructions are sufficient to cure any potential prejudice resulting from the admission of 404(b) evidence"); United States v. Tylkowski, 9 F.3d 1255, 1262 (7th Cir. 1993); United States v. Bell, 980 F.2d 1095, 1098 (7th Cir. 1992) (the instruction limited any prejudice, and the jury is presumed to have obeyed the court's instruction). Consequently, the trial judge did not commit an abuse of discretion in admitting the testimony of Motheral and Eutsey.

The decision of the district court is

AFFIRMED.


/1 Count One charged Denberg with being a felon in possession of a firearm in violation of 18 U.S.C. sec.sec. 922(g)(1), 924(a)(2), and 924(e). Count Two charged Denberg with possession with intent to distribute in excess of 10 grams of methamphetamine in violation of 21 U.S.C. sec. 841(a)(1). Count Three, which was later dropped by the government, charged Denberg with the use and carrying of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. sec. 924(c). Count Four charged Denberg with possession of a firearm while being an unlawful user of a controlled substance in violation of 18 U.S.C. sec. 922(g)(3).

/2 Denberg distributed significant quantities of methamphetamine on a "front" or credit basis to Motheral for further distribution for about two months. The defendant also supplied methamphetamine to Charles Eutsey on numerous occasions from his house.

/3 Although we address the merits of the claim, counsel for the appellant falsely certified that he complied with Circuit Rule 30 (he failed to attach transcripts of the district court's oral rulings). Fortunately, the government supplied the missing material, but we warn counsel to be more careful in the future or face possible sanctions. See, e.g., Pabst Brewing Co. v. Corrao, 161 F.3d 434, 437 n. 1 (7th Cir. 1998); Hibben v. Nardone, 137 F.3d 480, 481 n. 1 (7th Cir. 1998); Tangwall v. Stuckey, 135 F.3d 510, 515 n. 10 (7th Cir. 1998); Hill v. Porter Mem. Hosp., 90 F.3d 220, 225-27 (7th Cir. 1996).

/4 Denberg also objects to the scope of the warrantless search conducted by the officers contending that, even if Ward's consent to search the premise was valid in general, she was without the authority to consent to the search of the locked gun cabinet. However, this argument is without merit because at trial, Denberg testified that Ward had a key to the gun cabinet. We are of the opinion that the fact that Ward had a key to the cabinet clearly demonstrates that she had joint use and control over the cabinet as well as the contents contained therein, and as such could consent to a search of the cabinet. Furthermore, the Supreme Court has made it clear that a "lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." United States v. Ross, 456 U.S. 798, 820-821 (1982); see also Forman v. Richmond Police Department, 104 F.3d 950, 959 (7th Cir. 1997).

/5 Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Fed. R. Evid. 404(b). Rule 403 provides that "[a]lthough relevant, evidence may be excluded if

its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

/6 Although Denberg does state in his brief that "[w]e could argue all day about . . . whether the evidence was sufficient for the trial court to conclude that the second prong of the test has been met . . . ," he fails to address the issue in his brief and we, therefore, refuse to consider this issue on appeal. See e.g., Gagan v. American Cablevision, Inc., 77 F.3d 951, 965 (7th Cir. 1996) (failure to cite any factual or legal basis for an argument waives it); Bratton v. Roadway Package Sys., Inc., 77 F.3d 168, 173 n.1 (7th Cir. 1996) (argument that is not developed in any meaningful way is waived).

/7 For example, before Eutsey was allowed to testify the judge informed the jury that:

Mr. Eutsey--or the next witness who will be testifying--will be giving testimony about certain events that he'll say took place, dealing with Mr. Denberg. You may consider that evidence, but only for this purpose: If you find that Mr. Denberg possessed the methamphetamine alleged in Count 2, the government must further prove to you that Mr. Denberg intended to distribute that methamphetamine. You may consider this testimony from the next witness in helping you decide that issue of intent, in deciding that Mr. Denberg intended, if you first find that he possessed it. You may not, however, consider this evidence for any other purpose.