In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4033

United States of America,

Plaintiff-Appellee,

v.

Robert D. Vaughn,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of Illinois.
No. 99-CR-30068--Jeanne E. Scott, Judge.

Submitted May 8, 2001/*--Decided October 1, 2001


   Before Bauer, Posner, and Coffey, Circuit
Judges.

   Coffey, Circuit Judge.   On August 6,
1999, Robert Vaughn was charged in a
three-count indictment with conspiracy to
distribute cocaine base, 21 U.S.C. sec.
846, retaliating against an informant, 18
U.S.C. sec. 1513(b)(2), and possessing a
firearm in furtherance of a crime of
violence or drug trafficking offense, 18
U.S.C. sec. 924(c). During Vaughn's
trial, Illinois State Police Sergeant
Agnes Johnson testified regarding
controlled drug purchases she made from
Vaughn in 1994, which were unrelated to
the charged offenses. The trial court
admitted Johnson's testimony over
Vaughn's objection under Fed. R. Evid.
404(b), ruling that Johnson's testimony
was relevant to establish Vaughn's
intent, modus operandi, and motive.
Vaughn appeals, arguing that Johnson's
testimony should not have been admitted
because its probative value was
substantially outweighed by the danger of
unfair prejudice. We affirm.

I.  Factual Background
   Vaughn began selling crack cocaine in
late 1993 to early 1994, while living at
Eleanor Gaines's residence in
Springfield, Illinois. Gaines's grandson,
Dwight Morgan, also lived at the house at
that time and supplied Vaughn with the

crack that he sold. In addition Vaughn's girlfriend, Katherine Kantner, also lived in Gaines's house.

In July 1994, Sergeant Johnson, was working undercover with the Illinois State Police's Central Enforcement Group in Springfield investigating drug trafficking. During her assignment, Johnson was introduced to Donald Pasquale by Carol Dougherty, who was assisting the police as an informant. When Johnson and Dougherty sought to purchase crack cocaine from Pasquale, he called his supplier, Vaughn. Vaughn brought the crack to Pasquale and told Johnson that she could buy from him directly in the future and in furtherance of this procedure he supplied Johnson with his pager number.

Sergeant Johnson then made three controlled buys from Vaughn in August 1994. To initiate each purchase, either she or Carol Dougherty paged Vaughn. When Vaughn called them shortly thereafter, they ordered a quantity of crack, using coded language to refer to the drugs and the quantity desired. After receiving the order, Vaughn gave Johnson and Dougherty instructions to meet him at a Springfield grocery store parking lot. On each occasion, Vaughn drove to meet Johnson and Dougherty at a transaction location of his choice. During one of the purchases, Vaughn made it clear that he would not make the sale in the presence of more than one person, telling Johnson that "[i]t takes two to get indicted." On that occasion, Vaughn directed Dougherty to ride briefly as a passenger in his car before he would make the crack sale. Vaughn was indicted for his August 1994 drug transactions with Sergeant Johnson and Carol Dougherty, and pleaded guilty to the resulting three-count indictment in July 1996.

In spite of the 1994 indictment, Vaughn continued to sell drugs in the time period between the August 1994 sales to Sergeant Johnson and his July 1996 guilty plea resulting from those sales, and the charged offenses result from his conduct during that period. Vaughn's nefarious enterprise was successful. By late 1995, Vaughn had stashed $100,000 in proceeds from his drug business at a house where his mother lived. However, shortly after Vaughn's transactions with Sergeant

Johnson, he was forced to enlist the aid of his girlfriend Kantner as a result of the suspension of his driving privileges./1 Unable to deliver the drugs to his customers, Vaughn had Kantner make deliveries for him.

On November 7, 1995, Kantner was arrested for delivering crack to Kim Ingold, one of Vaughn's customers who at the time was acting as an informant for the Springfield police. Vaughn became angry that Kantner had been set up by Ingold because Kantner could no longer make deliveries for him and he attempted to hire Needham Davis and Peddie Taylor to bomb Ingold's residence. When Davis and Taylor refused to carry out his directive to bomb Ingold's house, Vaughn stated that he would take care of it himself. Kantner drove Vaughn to Ingold's residence, and at Vaughn's direction she placed an explosive device inside Ingold's front screen door. The detonation of the bomb caused extensive damage to her residence.

The Springfield police suspected Vaughn as being responsible for the bombing and questioned him shortly after the incident. Vaughn denied any involvement in the bombing, as did Kantner who was interrogated by the police at the same time. Despite Vaughn's and Kantner's denials regarding their involvement in the bombing, the police continued to suspect that they were responsible for the bombing of Ingold's house.

Ultimately in July 1999 (while faced with other criminal charges), Kantner admitted her involvement in Vaughn's drug enterprise as well as in the bombing incident. Based upon Kantner's confession, Vaughn was indicted and charged with conspiring with Kantner to distribute crack cocaine, retaliating against an informant, and possessing an explosive device in relation to a drug trafficking crime.

At a pretrial hearing on April 28, 2000, the government filed a notice with the court of its intent to use evidence related to Vaughn's 1994 drug sales to Sergeant Johnson. Vaughn objected to the use of evidence of his prior transactions, and the government filed a response to his objections. At an evidentiary hearing on May 4, 2000, the

trial judge reserved her ruling on the government's notice, instructing the parties that she would rule on the admissibility of the evidence at the trial.

During the trial, the government called Kantner to testify as to the scope and nature of the conspiracy with Vaughn to sell crack cocaine. Kantner testified that she did not become aware of Vaughn's drug-dealing operation until after she had been living with Vaughn for some time. Kantner identified Morgan as Vaughn's source for the drugs that he sold and further described Vaughn's business practices. According to Kantner, when a customer was interested in making a drug purchase, the customer would page Vaughn who would then contact the customer and designate a location to complete the sale. In particular, Kantner noted that Vaughn was careful to avoid any transactions that he felt might be suspicious and/or where he felt that the customer might be cooperating with law enforcement authorities. Kantner further explained that Vaughn believed that he could not be indicted on the word of one witness on a one-on-one basis and so was careful not to complete a delivery unless the customer was alone.

Finally, Kantner testified that she became involved in Vaughn's drug-dealing scheme after Vaughn lost his driving privileges. Kantner stated that Vaughn supplied her with the names of his customers and a pager in order that his customers could contact her, as well as the drugs that she was to deliver. Kantner also claims that Vaughn instructed her regarding his procedures for completing the sales, particularly directing her to conduct sales only when she was alone with the customer. Kantner testified that after completing deliveries she would turn the proceeds over to Vaughn who would count the money on a nightly basis to ensure his profit in the illicit drug enterprise. Finally, Kantner testified that, when Vaughn's drug-dealing business hit a low point on November 7, 1995 after Kantner's arrest for selling drugs to Ingold, Vaughn instructed her to bomb Ingold's residence.

Vaughn's counsel vigorously challenged Kantner's credibility on cross-

examination, suggesting that Kantner acted alone both in selling drugs and in bombing Ingold's residence. In support Vaughn pointed to the fact that Kantner had not told the police of Vaughn's involvement in the drug sales when she was arrested in 1995 for selling drugs to Ingold. Vaughn's counsel also pointed out that Kantner did not implicate Vaughn in the bombing of Ingold's residence when she was questioned shortly after the bombing occurred. Finally, Vaughn's counsel pointed to the fact that Kantner continued to sell drugs from 1996 to 1998 while Vaughn was incarcerated. Vaughn argued that these facts demonstrated that Kantner acted alone and without his knowledge in both the drug sales and the bombing.

After Vaughn's counsel cross-examined Kantner, the government sought to buttress her credibility with thetestimony of Sergeant Johnson who would testify about Vaughn's 1994 drug sales. The government argued that Johnson's testimony was relevant to demonstrate 1) Vaughn's intent to engage in the conspiracy to distribute drugs with Kantner; 2) Vaughn's method of operation; and 3) Vaughn's motive for entering the conspiracy with Kantner. The trial court ruled that the government's proffered purposes were permissible under Rule 404(b) and further ruled that the prejudicial effect of the prior crack sales did not outweigh its probative value, especially in light of the fact that the jury already had knowledge that Vaughn was in federal custody on another offense./2 Accordingly, the trial court allowed Johnson to testify.

Before Johnson testified, the court gave the jury a limiting instruction regarding Johnson's upcoming testimony. The court instructed the jury that they could:

consider [Johnson's testimony] only on the question of the defendant's motive, his intent, his preparation, his plan, his knowledge, his absence of mistake . . . and his background or relationship between himself and certain other witnesses. That evidence is to be considered only for [those] limited purposes in accordance with the instruction I've just given you.

Thereafter Johnson testified regarding

her undercover assignment with the Illinois State Police, during which time she made three controlled purchases of crack cocaine from Vaughn in 1994. Johnson also delineated Vaughn's method of operation, including the manner in which she contacted Vaughn and the manner in which he arranged the transactions. Johnson also identified Vaughn's customers that were known to her. Finally, Johnson testified about Vaughn's refusal to conduct transactions in the presence of anyone other than the customer. At the conclusion of the trial, the trial judge repeated the limiting instruction he gave earlier concerning Johnson's testimony before the jury. The jury found Vaughn guilty on all counts and sentenced him to a term of imprisonment of 720 months.

## II.  Issues

Vaughn raises only one issue on appeal: whether the trial judge abused her discretion when she admitted, pursuant to Fed. R. Evid. 404(b), Sergeant Johnson's testimony regarding Vaughn's 1994 drug sales.

## III.  Discussion

We review a trial court's decision to admit evidence under Fed. R. Evid. 404(b) for abuse of discretion. United States v. Denberg, 212 F.3d 987, 992 (7th Cir. 2000); United States v. Moore, 115 F.3d 1348, 1354 (7th Cir. 1997). "'The district court's determination of the admissibility of evidence is treated with great deference because of the trial judge's first-hand exposure to the witnesses and the evidence as a whole, and because of [her] familiarity with the case and ability to gauge the likely impact of the evidence in the context of the entire proceeding.'" Denberg, 212 at 987 (internal quotations omitted) (quoting United States v. Curry, 79 F.3d 1489, 1495 (7th Cir. 1996)). To determine whether evidence is properly admitted under Rule 404(b) we use the familiar 4-prong test. Under this test, we must determine whether:

(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and

close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice.

United States v. Gibson, 170 F.3d 673, 678 (7th Cir. 1999).

On appeal, Vaughn challenges only the application of the fourth prong, arguing that the admitted evidence had little probative value and that the danger of unfair prejudice was substantial. Vaughn argues that Sergeant Johnson's testimony had little or no probative value because Johnson never testified to any relationship between Vaughn and Kantner. Instead, Vaughn contends that "the powerful evidence by Sergeant Johnson became the focal point of the trial . . . and acted to convey to the jury that [he] was a bad person and [that] because he had engaged in prior drug transactions and had admitted guilt to same, he must be equally culpable for the crimes in the instant offense." We disagree.

Vaughn's contention that Sergeant Johnson's testimony had little or no probative value because she never testified to any relationship between Vaughn and Kantner is misguided at best. The government specified not just one, but three, permissible purposes for the presentation of Sergeant Johnson's testimony, none of which depended upon Johnson testifying to a relationship between Vaughn and Kantner. Our review of the record satisfies us that the Johnson's testimony was highly probative.

First, the government suggested that Sergeant Johnson's testimony was relevant to demonstrate Vaughn's intent to distribute crack cocaine. Vaughn offers only a weak and unconvincing attempt (unsupported by any citation to Seventh Circuit case law) to downplay this purpose, claiming that "the mere fact that a defendant engages in a drug transaction in the past . . . does not in all cases show his intent to distribute crack cocaine at all future dates." Vaughn was charged with a specific intent crime (conspiracy to distribute crack cocaine). See United States v. Irorere, 228 F.3d 816, 823 (7th Cir. 2000). We

have repeatedly held that it is proper to use other acts evidence to establish intent where the defendant is charged with a specific intent crime. Den-berg, 212 F.3d at 993; United States v. Lewis, 110 F.3d 417, 420 (7th Cir. 1997); United States v. Long, 86 F.3d 81, 84 (7th Cir. 1996); United States v. Harvey, 959 F.2d 1371, 1374 (7th Cir. 1992); United States v. Chiamson, 760 F.2d 798, 808 (7th Cir. 1985). Further, we have held in the past that proof of uncharged acts of drug trafficking are relevant and probative of whether a defendant had the intent todistribute drugs in his possession. See United States v. Allison, 120 F.3d 71, 75 (7th Cir. 1997); United States v. Hernandez, 84 F.3d 931, 935 (7th Cir. 1996). Consequently the evidence of Vaughn's 1994 drug transactions was highly probative of his intent to enter into a conspiracy to distribute drugs with his girlfriend, Katherine Kantner, and Vaughn's argument to the contrary is without merit.

The government also suggested that Johnson's testimony was probative of his method of operation. Modus operandi evidence must bear "a singular strong resemblance to the pattern of the offense charged and that the similarities between crimes be sufficiently idiosyncratic to permit an inference of pattern for purposes of proof." Moore, 115 F.3d at 1354-55 (internal citations and quotations omitted). We have previously approved of the admission of testimony under Rule 404(b) to establish a drug dealer's method of operation. See United States v. Williams, 216 F.3d 611, 613-15 (7th Cir. 2000). In this case, Sergeant Johnson corroborated Vaughn's modus operandi as testified to by Kantner, which was challenged during counsel's cross-examination of Kantner. Sergeant Johnson's testimony confirmed several distinct characteristics of Vaughn's method of operation: (1) Vaughn's method of arranging a drug transaction; (2) Vaughn's desire to avoid suspicious transactions; (3) Vaughn's customers; and (4) Vaughn's preferred location for completing the drug transactions.

Vaughn claims that the evidence of his 1994 drug transactions cannot serve as modus operandi evidence because in 1994 he did not use Kantner as a delivery person, as he was alleged to have done in

the charged offenses. However, in determining whether evidence is admissible as modus operandi, we focus "not on the dissimilarities between the charged offense and the other acts evidence, but on their common characteristics." Id. at 1355. After reviewing the record we are convinced that the numerous commonalities in this case between Vaughn's 1994 drug sales and his acts in the charged offense are sufficiently similar to convince us that Sergeant Johnson's testimony was probative of Vaughn's method of operation.

Finally, the government also suggested to the trial court that Sergeant Johnson's testimony would establish, in part, the motive for Vaughn to conspire with Kantner to distribute drugs. Vaughn argues that because Johnson never did mention Kantner in her testimony, that her testimony could not establish Vaughn's conspiracy with her. Vaughn's argument, however, mischaracterizes the purpose for which the government used Johnson's testimony. The government did not use Johnson's testimony to establish that Vaughn did in fact join in a conspiracy with Kantner, but instead used Johnson's testimony to establish the motive for Vaughn to enter that conspiracy. Among other things, Johnson testified that Vaughn drove to meet his customers. Johnson further testified that Vaughn's driving privileges were suspended in October 1994. When coupled with Kantner's earlier testimony that Vaughn had enlisted her to help his drug-selling scheme shortly after his driving privileges were suspended, Johnson's testimony was relevant: (1) to establish his need to enlist Kantner in his drug-selling scheme to deliver the drugs for him; and (2) to rebut Vaughn's suggestion that Kantner had been acting alone when she was delivering drugs. We agree with the trial court that Johnson's testimony was probative of Vaughn's intent to enter into the conspiracy with Kantner, his method of operation, and his motive to enter the conspiracy, all of which are permissible purposes under Rule 404(b).

Vaughn also argues unconvincingly that the danger of unfair prejudice warranted the exclusion of Sergeant Johnson's testimony despite its probative value. Vaughn claims and speculates that

Johnson's testimony regarding his 1994 drug sales would cause the jury to presume, regardless of the sufficiency of the government's case, that Vaughn had committed the charged offense. But Vaughn ignores the fact that the prejudicial impact of Johnson's testimony had already been lessened because the jury knew that he was incarcerated for having committed a federal offense.

Moreover, the trial judge gave the jury limiting instructions (not once, but twice) instructing them that they should consider Sergeant Johnson's testimony only as it related to Vaughn's motive, intent, and method of operation. We have held many times that limiting instructions are effective and proper in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence. Denberg, 212 F.3d at 994; United States v. Brooks, 125 F.3d 484, 500 (7th Cir. 1997); Moore, 115 F.3d at 1355. Vaughn offered no evidence suggesting that the trial judge's instructions were insufficient or that the jury failed to follow them, and we assume that the jury obeyed the instructions of the court.

IV.  Conclusion

We agree with the district court that Sergeant Johnson's testimony served three permissible purposes in that it was probative of: (1) Vaughn's intent to engage in the conspiracy to distribute drugs; (2) Vaughn's method of operation; and (3) Vaughn's motive to enter the conspiracy with Kantner. We further hold that the alleged danger of any conceivable unfair prejudice flowing from Sergeant Johnson's testimony was slight, and, if any existed, it was cured by the trial judge's limiting instructions. Moreover, even if any prejudice flowing from Johnson's testimony remained uncured by the limiting instruction, it did not outweigh the substantial probative value of the testimony. Consequently, the trial judge did not abuse her discretion in admitting Johnson's testimony. AFFIRMED.

FOOTNOTES

/* After examining the briefs and the record, we have concluded that oral argument is unnecessary. Accordingly, the appeal is submitted on the

briefs and the record. Fed. R. App. P. 34(a)(2).

/1 Vaughn's driving privileges were suspended be-
cause of conduct not related to his drug traf-
ficking.

/2 Vaughn's counsel brought out this fact on voir
dire for strategic reasons.