**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Aracelis PAREDES, Defendant–Appellant.**

No. 94–3913.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 12, 1996.
Decided July 2, 1996.

Barry Rand Elden, Chief of Appeals, John J. Tharp, Jr. (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

Jerry B. Kurz (argued), Kathryn Hall, Hall & Kurz, Chicago, IL, for Defendant–Appellant.

Before POSNER, C.J., and BAUER and KANNE, Circuit Judges.

KANNE, Circuit Judge.

A jury convicted Aracelis Paredes of several crimes arising out of her impersonation of an FBI agent. She appeals her convictions on the ground that the district court erred in admitting under FED. R. EVID. 404(b) evidence of two prior crimes where she impersonated a police officer. She appeals her sentence on the ground that the district court erred in making an upward departure. We affirm.

I

Paredes came up with an idea to make money by impersonating an FBI agent. She would locate a "lame" (defined by Paredes as "an older person who dresses kind of funny") leaving a store. Paredes would identify herself to the person as an FBI agent. Paredes would then tell the person that they had used counterfeit money in the store and that the FBI believed that the teller at the person's bank was passing the "funny" money. Paredes would instruct the person to retrieve a significant sum of money from their bank account (close to the total balance), and then she would make off with the money.

In early 1994, Paredes recruited Sherron Green to help her perpetrate the scheme. She showed Green various props, including an FBI wanted flyer, a badge, and a "Special Agent" identification card in the name of "Mary Woods" bearing Paredes's photograph and fingerprint. Paredes told Green that she had successfully run the scheme before to the tidy profit of $2,000. They tried the scheme once, but it failed because Green had

not yet mastered her role as Paredes's partner, "FBI agent Cynthia Johnson." Their second attempt turned out to be their last.

On April 7, 1994, Paredes and Green were parked in a Chicago-area mall when they noticed an elderly woman who Paredes said looked like "a good one." Their would be victim was Bernice Strzalka, a seventy-nine-year-old widow. They followed Mrs. Strzalka from the mall to her apartment, and when she pulled up to her apartment Paredes jumped out of the car and identified herself as an FBI agent. Green followed, likewise identifying herself as an FBI agent. They requested that Mrs. Strzalka let them question her inside her apartment. She assented, and they told her about their counterfeiting suspicions and that Mrs. Strzalka would have to surrender the money she had on her person, $44, so that it could be tested. They found out that Mrs. Strzalka's savings account contained $752. Because it was too late in the day to go to the bank, Paredes and Green left, telling Mrs. Strzalka they would be in touch with her that evening. It was at this point that Augustus Tabor, Green's husband, entered the con.

Tabor called Mrs. Strzalka at her apartment, and after identifying himself as "Captain Dan" of the FBI, he told her that the crime lab had confirmed her money was counterfeit. The next morning, Tabor again called Mrs. Strzalka and told her to go to the bank and withdraw $700 from her account. He said a plain-clothes police officer would watch the transaction.

The fact that the FBI wanted almost all the money in her account raised Mrs. Strzalka's suspicions. She contacted the Chicago police department, and several officers accompanied her to the bank. She withdrew the requested funds and returned to her apartment to wait, along with two police officers, for the "FBI agents."

Paredes, Green, and Tabor drove to Mrs. Strzalka's apartment. Paredes told Green and Tabor to go to the apartment and get the money. Chicago police officers arrested Green and Tabor after they entered Mrs. Strzalka's apartment, identified themselves as FBI agents, and requested the money. Paredes was arrested in her car in the parking lot. In her possession was the "Special Agent" identification card, a badge, and a pair of handcuffs. She told a police officer, "I just did three years in the state of Michigan for the same thing."

This was not the first instance where Paredes had attempted to con elderly women by impersonating a law enforcement official. In November 1989, she approached an elderly woman at the woman's home, identified herself as a police officer, and requested that the woman help her in a counterfeit investigation. Paredes asked the woman to withdraw money from her checking account, and Paredes made off with the money. In December 1989, Paredes approached an elderly woman after following her home from a grocery store. Paredes told the woman that she was a police officer, that the woman was passing counterfeit money, and that Paredes was conducting an investigation into counterfeiting. However, Paredes was unsuccessful in getting the woman's money. Paredes pleaded guilty to a charge of larceny by trick for the November con and a charge of extortion for the December attempted con. She served three years in prison, completing her sentence on January 4, 1993, and her parole expired on March 3, 1994.

The grand jury indicted Paredes on five counts. Count one charged Paredes with conspiring, along with Green and Tabor, to falsely impersonate an FBI agent in violation of 18 U.S.C. § 371. Count two charged Paredes with demanding money while falsely impersonating an FBI agent in violation of 18 U.S.C. § 912. Count three charged Paredes with detaining and searching the property of another while falsely impersonating an FBI agent in violation of 18 U.S.C. § 913. Counts four and five charged Paredes with aiding and abetting Green and Tabor while they attempted to obtain money and to detain and search the person and property of another while posing as FBI agents in violation of 18 U.S.C. §§ 2, 912, 913. Green and Tabor were also indicted, and they entered guilty pleas. Paredes pleaded not guilty.

Prior to trial, the government filed a motion seeking admission of the two prior convictions under FED. R. EVID. 404(b) to prove

924

Paredes's intent, preparation, plan, knowledge, and identity. The district court granted the motion. During the trial, an FBI agent read aloud portions of the transcripts of the two guilty pleas. Immediately preceding that testimony, the district court provided a limiting instruction to the jury. After hearing the evidence, which included testimony from both Green and Mrs. Strzalka, the jury convicted Paredes on all five counts of the indictment.

The government filed a motion requesting that the district court depart upward from the applicable guideline range. The district court granted the motion after finding that Paredes's criminal history category significantly underrepresented the likelihood of her committing future crimes. In support of that finding, the district court found that Paredes was a habitual criminal not effectively deterred by incarceration and that she had committed almost the identical crime two prior times and prison had not deterred her from committing it again. Retaining the offense level of 16, the district court increased Paredes's criminal history category two imaginary levels from VI to VIII, yielding a sentencing range of 58–71 months. The district court then sentenced Paredes to the maximum term: 71 months of imprisonment.

## II

■ Paredes's sole challenge to her conviction is that the district court erred in admitting evidence of the two prior convictions under FED. R. EVID. 404(b) because the probative value of that evidence was substantially outweighed by the danger of unfair prejudice. From our review of the record, it appears that Paredes did not make an objection to the admission of this evidence. The failure to make a timely objection generally constitutes forfeiture, and we will review only for plain error. *United States v. Smith*, 80 F.3d 1188, 1193 (7th Cir.1996) (citing *United States v. Olano*, 507 U.S. 725, 730–34, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993)). However, because the government failed to assert that Paredes forfeited her objection to the alleged error, the government has waived Paredes's forfeiture, and we will review the alleged error as if she had made a proper

objection. *United States v. Archambault*, 62 F.3d 995, 998 (7th Cir.1995).

■ Rule 404(b) proscribes the admission of evidence of "other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith." FED. R. EVID. 404(b). However, such evidence is admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident...." *Id.* We apply a four-part test in determining the admissibility of evidence under Rule 404(b), inquiring whether:

(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Koen*, 982 F.2d 1101, 1116 (7th Cir.1992) (quoting *United States v. Scop*, 940 F.2d 1004, 1009 (7th Cir.1991)). We will not upset a district court's decision to admit evidence under Rule 404(b) absent an abuse of discretion. *Koen*, 982 F.2d at 1116.

Paredes concedes that the two prior convictions were admitted for purposes of establishing her intent, knowledge, plan, preparation, and identity—proper subjects under Rule 404(b). She also concedes that there was sufficient evidence to support a jury finding that she had committed the prior crimes and that the prior convictions were for crimes similar enough and close enough in time to be relevant to the instant prosecution. Paredes argues that the district court erred in admitting the evidence because it was too prejudicial. She bases her unfair prejudice argument solely on the similarity of the two prior crimes to the charged crime in this case. According to Paredes, "The fact that she had previously done twice what she was now accused of doing undoubtedly led [the jury] to find her guilty here as well." The similarity of the previous offenses "made

the evidence too overwhelmingly prejudicial for it to be allowed."

■ Paredes completely fails to set forth a sound argument of unfair prejudice, let alone an argument that any unfair prejudice substantially outweighed the probative value of the two prior convictions. In fact, the similarity of her prior offenses to the charged offenses in this case increases the probity of that evidence and actually decreases the potential risk of unfair prejudice.

Courts exclude dissimilar evidence under Rule 404(b) because of the increased potential that a jury will use the evidence to make the forbidden inference: because the defendant committed an earlier crime, she is the type of person who is likely to commit crimes, and therefore she committed this crime. *See United States v. York*, 933 F.2d 1343, 1352–53 (7th Cir.), *cert. denied*, 502 U.S. 916, 112 S.Ct. 321, 116 L.Ed.2d 262 (1991). However, where the crimes are similar and the similarity is probative of an issue identified in Rule 404(b), the risk of the jury making the forbidden inference is slight. The jury can properly infer from the prior similar activity conclusions regarding the defendant's involvement in the charged offense. For example, the fact that a defendant committed a prior bank robbery while wearing a clown mask indicates that the defendant may have been the person who recently robbed a bank while wearing a clown mask.

In this case, the government properly proffered the evidence of the prior crimes to prove Paredes's intent, knowledge, plan, preparation, and identity. Paredes can make no colorable argument of prejudice, as she might have had the evidence of the prior crimes included unnecessary details that were shocking or repulsive so as to elicit an emotional response from the jury, *see United States v. Adames*, 56 F.3d 737, 742 (7th Cir.1995), or had the evidence been so repetitive as to flood the courtroom with evidence of her sordid character, *see United States v. Draiman*, 784 F.2d 248, 254 (7th Cir.1986).

It is almost axiomatic that evidence introduced by the prosecution is, to one degree or another, damning to the defendant. The evidence of the two prior crimes in this case was particularly damning, but contrary to the argument of Paredes, the damning nature of that evidence does not make it unfairly prejudicial. *York*, 933 F.2d at 1354.

### III

■ A district court is authorized to depart outside the guidelines where "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). A court cannot depart "based on a factor that the Commission has already fully considered in establishing the guideline range or ... on a factor that the Commission has expressly rejected as an appropriate ground for departure." *Williams v. United States*, 503 U.S. 193, 200, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992). The Commission has noted two circumstances that justify departure: where a defendant's "criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3.

Section 4A1.3 also sets forth the manner in which a district court, if it finds that departure is warranted, should determine the appropriate guideline range. After deciding to upwardly depart, a district court should sentence a defendant using the criminal history category that most accurately reflects the seriousness of the defendant's past criminal conduct. In the case of a defendant already in criminal history category VI, or for whom category VI is too lenient, a district court "should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." § 4A1.3.

■ The Commission added the guidance relevant to upward departure of category VI defendants in 1991. U.S.S.G. app. C, amend. 381. Prior to that time, the Commission had been silent with regard to the proper means for upwardly departing from category VI. In the interim, we decided that a district

court should increase a defendant's criminal history category to an appropriate hypothetical category, increasing the guideline range from ten to fifteen percent for each additional category. *United States v. Schmude*, 901 F.2d 555, 560 (7th Cir.1990). This is the system the district court followed in this case. However, neither side alleges error because the two systems—vertical and horizontal—essentially reach the same result in the instant case. *See United States v. Ferra*, 900 F.2d 1057, 1062 (7th Cir.1990) (noting that both vertical and horizontal components of guidelines provide 10 to 15 percent difference per level).[1]

■ In reviewing a district court's decision to depart, we consider whether (1) as a matter of law, the stated grounds for departure are proper; (2) the factual findings upon which the district court relied are clearly erroneous; and (3) the degree of departure is reasonable. *United States v. Johnson*, 53 F.3d 831, 834 (7th Cir.1995).

Paredes argues that the district court erred in departing because her record of criminal conduct, although extensive, does not qualify as the type of "egregious, serious criminal record" that justifies an upward departure from category VI. *See* U.S.S.G. § 4A1.3. According to Paredes, defendants in category VI by definition have extensive criminal records. She argues that departure for those defendants is only warranted when the prior crimes were ones involving fraud on a large scale or violence.

■ Whatever the merits of this argument may be, *see United States v. Glas*, 957 F.2d 497, 499 n. 4 (7th Cir.1992) (noting that departure from category VI is not limited to defendants with a record of committing violent crimes), it is inapplicable here. The guidelines provide that departure is appropriate where the criminal history category "does not adequately reflect the seriousness of the defendant's past criminal conduct *or*

the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3 (emphasis added). The district court made clear that its sole basis for departing was Paredes's significant risk of recidivism. It found two independent reasons why that risk was extreme: she was a habitual criminal and she had perpetrated an almost identical crime twice before. Thus, the district court based its decision to depart not on its perception regarding the seriousness of her past offenses but on its finding that "the defendant's criminal history category significantly under represents the likelihood that the defendant will commit future crimes."

Paredes argues that an upward departure from category VI on the ground of recidivism is improper because all category VI defendants have extensive records and therefore a high risk of recidivism. We disagree. The fact that a defendant is in category VI does not foreclose the possibility that the category does not adequately represent the likelihood she will commit future crimes. Indeed, the guidelines provide that such a likelihood is an appropriate ground for departure, and they do not limit the application of that ground to non-category VI defendants. U.S.S.G. § 4A1.3. And we have held that certain types of criminal records may foretell a recidivist nature not adequately represented by category VI. Such records include those where the defendant has previously committed similar crimes, *Schmude*, 901 F.2d at 559, and where the defendant has a history of committing additional crimes shortly after being released from custody, *United States v. Croom*, 50 F.3d 433, 435 (7th Cir.1995) (affirming departure, in part, based on finding that defendant "scarcely gets out of jail's shadow before committing another crime").

Paredes's past reflects her unrelenting deviant tendencies and documents her consistent return to a life of crime following incarceration.[2] Thus, the district judge acted

---

1. That the district court did not follow the method for departure set forth at § 4A1.3 constitutes an "incorrect application of the sentencing guidelines." *Williams*, 503 U.S. at 200–02, 112 S.Ct. at 1119–20. However, an incorrect application of the guidelines requires remand for re-sentencing only where "the sentence would have

been different but for the district court's error." *Id.* at 202–03, 112 S.Ct. at 1120. The parties agree that such is not the case here.

2. Between 1984 and 1990, Paredes was convicted ten times for crimes involving theft or fraud. From 1978 to 1983, she was convicted over thir-

properly in finding that her criminal history category did not adequately represent her likelihood of committing future crimes.

The district court also acted properly in finding that her criminal history category inadequately represented her increased risk of recidivism based upon the fact that Paredes had committed almost the identical crime two previous times. "Rationally, if a defendant has been convicted for the same offense more than once, he has demonstrated the need for greater sanctions to deter him from committing that same crime again— greater sanctions than might be required for a defendant who has never been convicted of a similar offense." *Schmude*, 901 F.2d at 559; *see also United States v. Anderson*, 72 F.3d 563, 566 (7th Cir.1995) (finding that previous convictions for similar crimes constituted "a clear ground for a heavier sentence"), *cert. denied*, —— U.S. ——, 116 S.Ct. 1558, 134 L.Ed.2d 659 (1996).

The district judge certainly acted properly in deciding to upwardly depart in this case. We also find that the extent of the court's upward departure was reasonable. If the district court had not departed, the guideline range would have been 46–57 months. By increasing Paredes's criminal history category by two levels to hypothetical category VIII, the guideline range became 58–71 months. We do not believe that such an increase is unreasonable in light of the district court's well-founded concerns regarding Paredes's significant risk of recidivism.

AFFIRMED.

ty times for other, unrelated offenses. The timing of her convictions easily supports the district court's finding that she is a habitual criminal undeterred by short periods of incarceration.