In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-1761

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

AKEEM ANIFOWOSHE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 CR 462—**James B. Moran**, *Judge.*

ARGUED SEPTEMBER 10, 2002—DECIDED OCTOBER 9, 2002

Before FLAUM, *Chief Judge*, and BAUER and MANION, *Circuit Judges*.

FLAUM, *Chief Judge.* Defendant Akeem Anifowoshe was charged with one count of bank fraud in violation of 18 U.S.C. § 1344, 14 counts of possession of stolen mail in violation of 18 U.S.C. § 1708 and one count of mail fraud in violation of 18 U.S.C. § 1341. A jury found Anifowoshe guilty on all sixteen counts, and he was sentenced to 24 months in prison. Anifowoshe now appeals the conviction on three grounds. He claims that the district court erred in admitting evidence of a state conviction, erred in allowing a non-expert to provide testimony on the similarity of handwriting, and erred in providing the jury with a "con-

scious avoidance" instruction. For the reasons stated herein, we affirm.

## I.  Background

The crimes for which Anifowoshe was convicted involve a scheme to defraud numerous banks in the Chicago area. From August 1995 to March 1996 someone opened accounts at various banks using one of five fictitious names— Eugene Bradford, Micheal[1] Johnson, William Sheron, Bernard Walker, and Paul Armstrong—for each account. One of three addresses was also given for each account— 5919 South Calumet, Chicago; 60 East Chestnut, Chicago; and 16781 Torrence Avenue No. 214, Lansing.

Once these accounts were set up, the perpetrator of this fraud deposited stolen and forged credit card access checks into the accounts. The money, or at least some of it, was then withdrawn from the accounts through ATM withdrawals, debit card transactions and cashed checks.

On March 11, 1996, postal inspectors videotaped Anifowoshe entering a Mail Boxes Etc. at 16781 Torrence Avenue, Lansing. Anifowoshe entered the store and retrieved mail from Box 214 (where mail to the address 16781 Torrence Avenue No. 214 was being delivered). Anifowoshe was arrested the following day when he returned to the store.

A substantial mass of evidence ties Anifowoshe to the fraud scheme. When arrested he possessed a key to Box 214 and a cellular telephone registered to the name of William Sheron and the address of 5919 South Calumet, Chicago. Anifowoshe also possessed an identification card bearing the 16871 Torrence Avenue address. The card

---

[1]  The name used was "Micheal" not "Michael."

matched a photocopy of an identification card given to a Citibank employee in connection with one of the fraudulent accounts. The number on the card also matched the number written down by a First Chicago Bank employee in connection with one of the other fraudulent accounts. Additionally a photocopy of an Illinois driver's license given to a North Community Bank employee and bearing Anifowoshe's photograph was admitted into evidence. Finally, 26 documents—at least one relating to each charge—including checks and deposit and withdrawal slips bore Anifowoshe's fingerprints.

Based on this and other evidence Anifowoshe was charged with one count of bank fraud in violation of 18 U.S.C. § 1344, 14 counts of possession of stolen mail in violation of 18 U.S.C. § 1708 and one count of mail fraud in violation of 18 U.S.C. § 1341. A jury trial followed.

At trial the government sought to introduce evidence of a state theft charge to which Anifowoshe had pled guilty pursuant to Fed. R. Evid. 404(b). The court admitted the evidence over defense counsel's objection. The state charge related to a fraud scheme virtually identical to those at question in the instant case. On January 16, 1996, Anifowoshe opened an account at First National Bank of Illinois under the name Bernie Leslie. The address provided for the account was 16781 Torrence Ave., Lansing. Anifowoshe deposited stolen credit card access checks into the account. Anifowoshe was able to withdraw some of these funds before the proceeds of the account were frozen when the bank suspected fraud. Two of the checks deposited in the account displayed the address of 60 East Chestnut. One check drawn on the account was made payable to and cashed by Micheal Johnson.

Later during the trial Theodore Knesek, a fraud investigator at Old Kent Bank, was called to testify. On cross-examination defense counsel asked Knesek to compare the

handwriting of the signatures borne on the signature cards associated with the fictitious account holders. On redirect the government, over defense counsel's objections, asked Knesek to compare the signature purporting to be that of Paul Armstrong with Anifowoshe's signature. Knesek noted that the handwriting appeared to be the same because of the similarities in the "A" in Armstrong and the "A" in Anifowoshe.

At the conclusion of trial the jury was instructed without objection. These instructions included a "conscious avoidance" instruction. The instructions were accepted by attorneys for both sides.

Anifowoshe was found guilty on all counts and sentenced to 24 months in prison.

## II. Discussion

### a. Evidence of State Conviction

Anifowoshe first claims that the district court improperly admitted evidence of other acts under Fed. R. Evid 404(b)[2] when it allowed the introduction of evidence concerning the state theft charge to which Anifowoshe had pleaded guilty.

---

[2] Fed. R. Evid. 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

We review a trial court's decision to admit evidence under Fed. R. Evid. 404(b) for abuse of discretion. *See United States v. Vaughn*, 267 F.3d 653, 658 (7th Cir. 2001). In determining whether a trial court has abused its discretion in the Rule 404(b) context, we apply a four-prong test asking whether:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice.

*Id.* Each prong must be met for the evidence of other acts to be admissible.

Anifowoshe argues that because the act at issue in the state fraud conviction occurred subsequent to the acts at issue in the instant case the evidence is inadmissible.[3] He draws this conclusion from the language of this court in *United States v. Betts*, 16 F.3d 748 (7th Cir. 1994) *abrogated on other grounds by United States v. Mills*, 122 F.3d 346 (7th Cir. 1997). There we noted that "simply because evidence of a prior act is admissible under Rule 404(b) for a particular purpose does not mean that a similar but subsequent act is necessarily admissible for the same purpose." *Id.* at 757. Anifowoshe attempts to turn this language into a fifth prong to the established test. The

---

[3] In his reply brief Anifowoshe concedes that at least one of the acts at issue in this case did occur subsequent to, or at least simultaneously with, the state acts. As the timing of the acts is not decisive in this case, we do not dwell on characterizing acts as simultaneous, subsequent or prior.

language in *Betts* does not, however, support this argument. To say that evidence of a subsequent act is not necessarily admissible where evidence of a prior act was admissible is not to say that evidence of a subsequent act is never admissible. This is clear from our language in *Betts*:

> Rule 404(b), of course, does not restrict evidence concerning the defendant's "other acts" to events which took place *before* the alleged crime; by its very terms, 404(b) does not distinguish between "prior" and "subsequent" acts. The critical question is whether the evidence is sufficiently probative of a matter within the rule's purview. Depending upon the factual circumstances, the chronological relationship of the charged offense and the other act may well have some bearing on this inquiry, but it is not necessarily dispositive.

*Id.* at 757 (citations and internal quotations omitted). The appropriate analysis is the well-established four-prong test. The timing of the act is only relevant inasmuch as it affects considerations inherent in that test.

Applying the four-prong test to the admission of evidence regarding the state conviction, we find that the trial court did not abuse its discretion. Starting with the first prong, the evidence was directed at proving a matter in issue other than propensity. There are numerous and striking similarities between the crimes involved in the state charge and the crimes involved in the instant case. The perpetrator of the state theft used the same address to open a fraudulent account as did the perpetrator of the federal fraud scheme. A check from the state theft account was made payable to Micheal Johnson, to whom some of the accounts in the federal scheme were registered. Two checks deposited in the state account displayed an address identical to an address used to open accounts in the federal scheme. The mailbox at Mail Boxes Etc. that

was used in the federal scheme was registered to the same name as the account involved in the state scheme. On top of all this, both schemes involved the identical method of depositing stolen credit card access checks into accounts opened under fictitious names. Given these similarities the evidence was admissible to establish *modus operandi* for the purpose of proving identity. *See United States v. Robinson*, 161 F.3d 463, 467 (7th Cir. 1998) ("Evidence of modus operandi is evidence that shows a defendant's distinctive method of operation. Such evidence may be properly admitted pursuant to Rule 404(b) to prove identity.") (citations omitted).

The second prong requires the other act to be similar and close enough in time that it is relevant to the matter in issue. As has been noted the similarities between the act at issue in the state conviction and the acts in this case are overwhelming. The space in time is nothing more than a few months, and Anifowoshe has made no argument as to why the time lapse of a few months renders the evidence irrelevant. Indeed, it is hard to see how evidence of such a similar act could be rendered irrelevant by anything but an enormous lapse of time.

As for the third prong, Anifowoshe has produced no argument, and nothing in the record suggests, that the evidence is insufficient to support a jury finding that Anifowoshe committed the similar act.

The fourth prong requires that the probative value of the evidence not be outweighed by the danger of unfair prejudice. The probative value of the evidence in question here is extremely high. The evidence goes toward proving identity through *modus operandi*. Anifowoshe fails to provide any concrete arguments that the evidence created an unfair prejudice. The evidence did not include details that were shocking, repulsive or "so repetitive as to flood the court-

room with evidence of [the defendant's] sordid character." *United States v. Paredes*, 87 F.3d 921, 925 (7th Cir. 1996) (citations omitted). And when other acts bear a striking similarity to the acts with which the defendant has been charged, this court has noted that the similarity "increases the probity of that evidence and actually decreases the potential risk of unfair prejudice." *Id.* Evidence of other acts is probative rather than unfairly prejudicial when the jury infers that a criminal who has committed one crime in a very specific and particular manner, i.e., with a particular *modus operandi*, is likely to have the same identity as the person who has committed a separate crime in the same particular manner. Explaining this rule we noted in *Paredes*:

> [W]here the crimes are similar and the similarity is probative of an issue identified in Rule 404(b), the risk of the jury making the forbidden inference is slight. The jury can properly infer from the prior similar activity conclusions regarding the defendant's involvement in the charged offense. For example, the fact that a defendant committed a prior bank robbery while wearing a clown mask indicates that the defendant may have been the person who recently robbed a bank while wearing a clown mask

*Id.* Thus Anifowoshe has made no showing of unfair prejudice.

As the four prongs of our test have been met, it is clear that the trial court did not abuse its discretion in admitting evidence of the other act.

### b. *Handwriting Testimony*

Anifowoshe next claims that the district court improperly allowed Knesek, a non-expert, to testify as to similarities in handwriting.

First we must determine whether Anifowoshe has waived this argument. The government argues that Anifowoshe waived his objection to the testimony comparing the Armstrong signature with his own by urging the district court to allow Knesek to testify about the similarities and dissimilarities of the various signatures of the fictitious account holders. This argument confuses waiver with opening the door. Defense counsel urged the court to allow Knesek to testify about the signatures of the fictitious account holders. However the issue here is whether the testimony comparing the fictitious signature of Armstrong with the real signature of Anifowoshe was properly allowed. Anifowoshe argues that the issues involved in these two questions are different and therefore the questioning on cross-examination did not open the door for the related but different questioning on redirect. The merits of this argument will be addressed, but Anifowoshe did not, simply by asking a handwriting question, waive all objections to any question on redirect that might have some relationship to handwriting. In fact defense counsel made his objections clear throughout the trial. After the sidebar where the government first suggested questioning Knesek about the Armstrong and Anifowoshe comparison, Mr. Mondry, the defendant's attorney, noted his objection:

> MR. MONDRY: Okay. Just for the record, over my objection.
>
> THE COURT: Sure.

Later during the questioning Mr. Mondry once again objected:

> Q: Would you say those would have been written by the same person or appear to be?
>
> MR. MONDRY: Objection.

And when the government, during closing arguments, brought up the testimony regarding the Armstrong sig-

nature as compared to Anifowoshe's, the defense counsel once again objected:

> MR. MONDRY:   Your Honor, this is over defendant's objection.

> THE COURT:   I understand.

Thus Anifowoshe did not waive his objections to the handwriting testimony comparing the Armstrong signature with his own.

Absent a waiver or forfeiture, we review a district court's decision to admit evidence for an abuse of discretion. *United States v. Wash*, 231 F.3d 366, 371 (7th Cir. 2000). The district court's determination regarding the admissibility of evidence is given great deference. *Id.* Specifically "[t]his circuit has held that a trial judge has broad discretion in determining the scope of redirect examination." *United States v. Touloumis*, 771 F.2d 235, 241 (7th Cir. 1985).

The district court is within its discretion in allowing testimony if the objecting party has already opened the door for such testimony. "This circuit has held on numerous occasions that when a party questions a witness on a subject, even though that subject may not be strictly relevant to the case, the party cannot complain on appeal if the opposing party subsequently introduces evidence on the same subject." *Id.*; *see also United States v. Senffner*, 280 F.3d 755, 762-63 (7th Cir. 2002).

In this case defense counsel questioned Knesek about the similar appearance of numerous signatures appearing on the signature cards associated with the fraudulent bank accounts. Anifowoshe tries to avoid the opened door conclusion by arguing that the questions on cross-examination did not concern the identity of the signor but just whether the signatures depicted different names. This is not supported by the record. During side bar defense counsel made the following explanation:

> MR. MONDRY:   What I would like to do is there's four or five accounts that have been opened up and they have signed signatures on those cards. I am not asking for his expert opinion, but I believe its in his—he can offer an opinion based on his experience in the area of comparing signature cards whether those signatures were made by the same person.

Anifowoshe tries to counter this by pointing out the testimony of the witness on redirect:

> Q:  When you said they appeared to be different, can you tell the jury what you meant?
>
> A:  It's a different name.
>
> Q:  Okay and then that's all that you were saying, correct?
>
> A.  Correct.

While this answer does lend some weight to Anifowoshe's argument, it was not an abuse of discretion by the trial judge to consider the actual questions posed by defense counsel, defense counsel's stated intention in questioning, and the actual answers initially given by the witness to be more informative than the re-characterization of the testimony given by the witness on redirect. This conclusion is additionally supported by the re-cross:

> Q:  Mr. Knesek, when I showed you, and I can re-show them to you if you don't recall, the signatures all appeared to be different, is that correct?
>
> A:  Correct.
>
> Q:  And when I say "different," I mean that you wouldn't be surprised IF they were written by separate people, is that correct?
>
> A:  Correct.

We find that the district court did not abuse its discretion in allowing Knesek to testify as to the similarities in the signature of the fictitious Armstrong and the signature of Anifowoshe because Anifowoshe opened the door to the testimony.

### c. Jury Instructions

Anifowoshe also challenges the "conscious avoidance" jury instruction. We must first determine whether this challenge has been waived.

Waiver of a right at the trial level precludes a party from seeking review on appeal. *See United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996). Waiver is deemed to have occurred when a party intentionally relinquishes or abandons a known right. *Id.* A few brief passages from the record show that such a waiver is present with regard to any right Anifowoshe may have had vis-a-vis objecting to the jury instructions.

The record shows that at the beginning of the trial Anifowoshe agreed to the instructions:

> THE COURT: Have you had a chance to go through the government's instructions?
>
> MR. MONDRY: Yes, your honor. I am in agreement with those.
>
> THE COURT: Okay, and do you have any others that you are going to be presenting?
>
> MR. MONDRY: At this point, not. If something comes up during the course of trial, then I will let you know, but I don't anticipate offering any.
>
> THE COURT: Okay. So as of now at least I can just anticipate that the jury instructions that have been

presented by the government are the ones we are going to give.

MR. MONDRY:   Yes.

This agreement was repeated at the end of the trial:

THE COURT:  And I should memorialize that—it's already in the record someplace, but a fitting place to do it is right after the instructions, that the instructions were given without objection by either side.

MR. MONDRY:   That's correct, Your Honor, on our side.

MR. BERKOWITZ:   Correct.

Anifowoshe's argument that these affirmations do not rise to an intentional relinquishment, if accepted, would create an almost insurmountable standard to proving waiver. This argument is not persuasive. Anifowoshe waived any objection to the jury instructions.

## III.  Conclusion

The district court properly admitted at trial the evidence of the state conviction under Rule 404(b). Regarding the handwriting testimony, Anifowoshe opened the door and therefore the district court did not abuse its discretion in allowing a non-expert to present testimony on the similarity of the handwriting. Finally Anifowoshe waived any objection to the "conscious avoidance" instruction given to the jury. Therefore Anifowoshe's conviction is AFFIRMED.

A true Copy:

  Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—10-9-02