UNITED STATES of America,
Plaintiff–Appellee,

v.

Mark WHITE, Defendant–Appellant.

No. 02–3608.

United States Court of Appeals,
Seventh Circuit.

Argued April 3, 2003.

Decided May 29, 2003.

Rehearing Denied July 9, 2003.

Before CUDAHY, MANION, and
KANNE, Circuit Judges.

## ORDER

Mark White, a Gary Police Officer and part-time security guard at a strip club, assaulted Brenda Pryor, one of the club's dancers. A jury found him guilty of violating Pryor's constitutional rights under color of law in violation of 18 U.S.C. § 242, and he was sentenced to 27 months' imprisonment. White appeals and we affirm.

## I.

Mark White, a police officer with the City of Gary, Indiana, held a part-time job as a security guard at Delilah's Fantasy Dolls Club, a strip club in downtown Gary. The owner and employees of Delilah's knew that White was a police officer and he often wore his badge and gun while at Delilah's.

Late in the evening of March 15, 2000, Brenda Pryor, a dancer at the club, got into an argument with the bartenders over her pay for the evening. White, who was working security that evening, asked her to leave the club. An argument ensued between White and Pryor, which quickly escalated to violence when Pryor used a racial epithet to describe White. White, who was 6' 3" and over 300 pounds, struck Pryor several times and eventually she was thrown to the ground. During the criminal trial, the jury heard testimony that White was wearing his badge and his gun on the night in question. Testimony was also presented that during the altercation Pryor tried to call the police, but White grabbed the cellular phone from her hand and shouted "I am the [expletive] police." Eventually the police were called to the scene by another employee and Pryor was taken to the hospital. She suffered bruises and swelling of her face, a laceration to her lip, and needed stitches on the inside and outside of her mouth due to a hole in her cheek caused by White's blows.

After the club closed for the night, White returned to the police station and prepared an arrest report for Pryor. In that report, White identified himself as the complainant, the arresting officer, the booking officer, and the reporting officer, either as "Cpl. M. White," "M. White," or "Mark White" with his badge number. The arrest report charged Pryor with "intimidation[,] resisting law enforcement[,] battery on law enforcement/disorderly conduct." Based in part on White's arrest report, two Gary police officers went to the hospital and placed Pryor under arrest. The charges were eventually dropped after an investigation.

White, on the other hand, was later charged with violating Title 18 U.S.C. § 242 for violating Pryor's constitutional rights under color of law. White entered a plea of "not guilty" and proceeded to trial where he was found guilty and thereafter sentenced to 27 months' incarceration, to be followed by three years of supervised release. White appeals.

## II.

White raises three issue on appeal. First, he contends that there was insufficient evidence to show that he acted under color of law in his confrontation with Pryor. As a security guard, he argues, his duties were to maintain order and make sure that both the patrons and the dancers acted in an orderly fashion. If they became unruly he could remove them, in his private capacity, from the premises. As such, he maintains that his actions do not rise to the level of a civil rights violation because, at most, the evidence shows that he was acting as a private security guard during the physical confrontation with Pryor and not as an agent of the state. We review sufficiency-of-the-evidence questions "in the light most favorable to the government and ask whether any ra-

tional trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Richardson,* 208 F.3d 626, 631 (7th Cir.1986) (quotations omitted).

■ It is unlawful under 18 U.S.C. § 242 (2000) for any individual, "under color of law ... [to] wilfully subject[ ] any person in any State ... to the deprivation of any rights, privileges or immunities secured or protected by the Constitution or law of the United States." In *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Supreme Court noted that "under color of law" has the same meaning in 18 U.S.C. § 242 as does "state action" in 42 U.S.C. § 1983, and that the actions of a state officer who exceeds the limits of his authority constitute "state action for the purposes of the Fourteenth Amendment." *Id.* In this case White does not contend that his actions would have been within his authority as a police officer, but instead argues that his actions were not cloaked in state authority because he was acting as a private citizen. In analyzing the merits of this argument, we consider both the nature of the acts performed by the accused state actor and the circumstances surrounding those acts to determine whether the officer is acting under color of law when he is off-duty. *Davis v. Murphy,* 559 F.2d 1098, 1100–01 (7th Cir.1977). *See also Traver v. Meshriy,* 627 F.2d 934, 937–38 (9th Cir.1980) (off-duty police officer, who was working as a "security teller" pursuant to the police department's secondary hiring program and whose primary duty in the event of a crime was to the department rather than the bank, was held to have acted under color of law when he detained a customer). Without question, White was performing his duties as a security guard when the incident occurred; however, the jury was presented with significant evidence of the circumstances surrounding the confrontation that indicate

that his actions were taken under color of law.

In prior decisions, we have explained that one important factor that juries may consider in 18 U.S.C. § 242 cases involving police officers performing private acts, is whether the officer was "displaying signs of state authority and advertising the presence of a state actor" during the incident. *Honaker v. Smith,* 256 F.3d 477, 485 (7th Cir.2001) (describing *Pickrel v. City of Springfield,* 45 F.3d 1115, 1118–19 (7th Cir.1995)); *Davis,* 559 F.2d at 1101 (off-duty police officers who displayed guns, badge, and identified themselves as police officers during unprovoked assault were acting under color of law). Indeed, we have held that those signs may be enough, on their own, to establish action under color of law. *Id.* In this case, the jury was presented evidence that when White assaulted Pryor, he was displaying signs of state authority. White made his police affiliation known to others throughout his employment at Delilah's, and testimony was presented that during his assault on Pryor he was wearing both his gun and badge. Furthermore, White declared himself to be a police officer during the assault and prevented Pryor from calling other officers. In addition, the charges that White himself specified in his arrest report reflect action allegedly taken against him *as a police officer* during the assault. The fact that he filed an official report that resulted in Pryor's arrest underscores his imposition of state authority. White concedes that this "particle" piece of evidence is probative, although not conclusive. However, in combination with all of the aforementioned evidence presented at trial, a rational jury could have determined that White was acting under color of law when he assaulted Pryor.

Next, White argues that the trial court abused its discretion in admitting evidence of a prior assault. Specifically, the gov-

ernment introduced evidence that on January 20, 1993, White assaulted Janice Barclay and Rhonda Coleman while in uniform and on duty in Gary, Indiana. The jury was presented evidence that White assaulted the two women after Barclay made a disparaging remark toward White. White was subsequently suspended from duty for ten days for the assault. White argues that the trial court's decision to admit evidence of the incident which took place more than seven years prior to the charged offense was extremely prejudicial and in violation of Rule 404(b). This court reviews challenges to the admissibility of evidence for an abuse of discretion, and the lower court's determination is given "great deference." *United States v. Anifowoshe*, 307 F.3d 643, 649 (7th Cir.2002).

Title 18 U.S.C. § 242 is a specific intent crime, and at trial the United States held the burden of proving that White acted "willfully" – that is, with specific intent to violate Brenda Pryor's constitutional right not to be unjustifiably assaulted by a police officer. *United States v. Brown*, 250 F.3d 580, 584 (7th Cir.2001). Intent, therefore, is a material issue in the case and the prosecution is entitled to establish it by using admissible evidence of its choosing. *See United States v. Williams*, 238 F.3d 871, 875 (7th Cir.2001). At trial, the government argued that the evidence was probative as it tended to show White's intent to violate the rights of a citizen under color of law, as opposed to just his propensity for violence. Evidence of other crimes, wrongs, or acts to prove, among other things, intent to commit the crime for which a defendant is charged is admissible under Rule 404(b) depending on whether the evidence:

(1) tends to establish a matter at issue other than the defendant's propensity to commit the crime charged; (2) is sufficiently similar and close in time to the matter at issue to be relevant; (3) supports a jury finding that the defendant

committed the similar act; and (4) has probative value that substantially outweighs the danger of unfair prejudice. *Brown*, 250 F.3d at 584.

■ White argues that his prior assault fails to satisfy prongs one and four of the four-part test because the evidence did not show his intent to commit the charged crime and that it was prejudicial because it tended to show a propensity for violence. The evidence demonstrated, however, that White was on notice that the use of unnecessary force under color of law is illegal and, more specifically, that unreasonable force in response to non-threatening verbal comments was in excess of his authority. The government contended at trial that White, armed with that knowledge, possessed the specific intent to act illegally against Pryor. Because of this probative value, we conclude that the district court did not abuse its discretion in finding that the evidence satisfied prong one. *See Brown*, 250 F.3d at 584–85 (holding that prior assault by a police officer was probative as to his intent under 18 U.S.C. § 242).

As to prong four, White is correct that the evidence of his prior assault is prejudicial. Nevertheless, the district court did not abuse its discretion in finding that this prejudice was substantially outweighed by the probative value of the evidence. A district court's determination of whether evidence will cause undue prejudice is given great deference since the court can observe first-hand the evidence and witnesses presented, and can "gauge the likely impact of the evidence in the context of the entire proceeding." *United States v. Torres*, 977 F.2d 321, 329 (7th Cir.1992) (evidence of prior threats admissible in witness tampering prosecution to show defendant's intent to retaliate). Furthermore, any undue prejudice caused by this remark was mollified by the court's jury instruction to consider the evidence only

insofar as it tended to show White's intent. *See, e.g., United States v. Coleman*, 179 F.3d 1056, 1062 (7th Cir.1999).[1]

Finally, White contends that the trial court abused its discretion in admitting evidence that a polygraph examination had been administered to White. The jury heard testimony, on redirect examination, from F.B.I. agent Richard Osborne (the agent who interrogated White), that White altered his version of the altercation after taking a polygraph examination during the latter stages of his interrogation. The district court conducted a Fed.R.Evid. 403 balancing test during the trial and concluded that the probative value of the administration of a polygraph test outweighed the prejudicial impact of that test. This court reviews challenges to the admissibility of evidence for an abuse of discretion. *Anifowoshe*, 307 F.3d at 649.

■ Here, the results of the polygraph were not revealed to the jury, but instead, only the existence of the polygraph was elicited as testimony. The existence of the examination was introduced as evidence because during the cross-examination of Agent Osborne, White's attorney questioned him as to his interview tactics in a manner that implied that Osborne had brow-beaten White for six hours until White finally changed his story. On redirect, the government elicited testimony that White had taken a polygraph examination near the end of the interrogation and that subsequent to the test, he changed his story. White's attorney then had the opportunity to cross-examine the FBI agent on the subject. Thus, although the implication of the evidence was that White failed the polygraph exam, the evidence was not introduced for that purpose. We conclude that the court did not abuse

its discretion in allowing this testimony given that White, on cross-examination, had opened the door to evidence concerning Osborne's interview tactics. Courts have "broad discretion in determining the scope of redirect examination." *Anifowoshe*, 307 F.3d at 649. Because White's attorney opened the door on the issue of Osborne's methods of interrogation during cross-examination, he may not now assert error when the court allowed the government to introduce evidence on the same subject on redirect. *Id.*

### III.

For the foregoing reasons we AFFIRM the district court's decision.

---

1. The jury was instructed that evidence regarding the Barclay/Coleman incident could be considered "only on the question of whether the defendant intended to violate the civil rights of Brenda Pryor. You should consider this evidence only for this limited purpose."

