In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-3036

JOSEPHINE MANUEL,

*Plaintiff-Appellant,*

v.

CITY OF CHICAGO,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99-C-3785—**Donald E. Walter**, *Judge.*[1]

ARGUED APRIL 3, 2003—DECIDED JULY 9, 2003

Before CUDAHY, MANION, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Since 1985, Josephine Manuel, an African-American female, has worked for the City of Chicago's Fleet Management Department, which maintains all the City's motor vehicles, steadily rising in rank and salary. In recent years, she actively sought out further opportunities for advancement, visiting the Department of Personnel to review available positions within the various City departments, pursuing audits of her current work duties, and communicating regularly with Al John

---

[1] United States District Judge for the Western District of Louisiana, sitting by designation.

Fattore, the Department's Deputy Commissioner for Administration and one of Manuel's supervisors, about possibilities for promotion.

In August 1997, Manuel learned that the Department had received approval to create a new position of Projects Administrator, but by the time she became aware of the position, it had already been filled by Paul Plantz, a white male. Manuel was surprised that despite her oft-voiced interest in promotional opportunities, she had not been advised that the Department was creating the new position, that the job opening for the new position was never publicly posted, and that she therefore never had the opportunity to apply for it. When another Projects Administrator position was expected to open in 1998, she was not selected for that position either.[2]

On June 8, 1999, Manuel filed a complaint against the City, alleging that she had been discriminated against in the filling of the two Projects Administrator openings because of her race, sex, or a combination of both, in violation of Title VII and 42 U.S.C. § 1981. She also claimed that the City had retaliated against her for bringing the discrimination charges by denying her other promotion opportunities and subjecting her to new and increased criticism of her work. The City moved for summary judgment and the district court granted its motion with respect to the § 1981 claims (which Manuel conceded) and the retaliation claim, finding that Manuel failed to identify any adverse employment actions taken by the City *after* she filed her complaint of discrimination. In addition, the court found that Manuel had failed to estab-

---

[2] Martin Nellis, the only white candidate out of a total of four candidates, was eventually selected to fill this second vacancy. The position, however, was never approved by the City's Budget Office, and thus never funded, so the position was never actually filled.

lish a *prima facie* case of discrimination with respect to the second Projects Administrator position opening because that position was never filled. The court denied summary judgment on Manuel's Title VII claims involving the August 1997 Projects Administrator vacancy, and those claims went to trial before a jury.

Before trial, the City moved *in limine* to exclude any evidence of race, sex, or combined race-sex discrimination toward individuals other than Manuel as irrelevant and prejudicial. Manuel objected to any such limitation, as she wished to offer the testimony of Barbara Sutton who, as the former manager of auditing in the Fleet Management Department, had the opportunity to witness Fattore's interaction with the Department's employees—which apparently included several instances of discrimination toward female, African-American employees.

In considering the City's motion, the district court ordered Manuel to provide "a short statement of expected testimony from Barbara Sutton." Manuel's counsel responded with a letter in which he stated that Sutton "believes Fattore is a racist because of the way he treats personnel. . . . [Sutton] and her assistant (also a black female) were treated badly by Fattore while other white cabinet members were not. The testimony we would elicit from Ms. Sutton is as to what she observed about the treatment of herself, Plaintiff, and other black employees by Fatorre [*sic*]." After reviewing Manuel's offer of proof, the district court ruled that "Sutton may only testify as to her observations of Al Fattore's treatment of plaintiff and not as to any other matter."

Fattore, as Manuel's supervisor, was a primary witness during the trial. During his cross-examination, the City's attorney and Fattore had the following exchange:

Q. Have you ever treated Josephine Manuel differently because she's an African American?

A.  No.

Q.  Have you ever treated anyone differently at Fleet Management because they are African American?

A.  No.

(Tr. Trans. at 220.) Manuel argued to the district court that Fattore's assertion, elicited by the City's own attorney, that he had never treated any employee differently on account of race should have opened the door for her to offer evidence of race, sex, or combined race-sex discrimination by Fattore toward individuals other than Manuel—including the testimony of Barbara Sutton.

After hearing argument on the issue, the court indicated that it believed the City had, in fact, opened the door to such evidence, but "the door is going to let way too much in. We will be trying cases that are—have no relationship to this." (Tr. Trans. at 228.) The court therefore denied Manuel's request to introduce evidence of other instances of discrimination,—including an Equal Employment Opportunity Commission ("EEOC") complaint previously filed by Sutton against Fattore—but agreed to provide a limiting instruction to the jury to address any prejudice Manuel may have suffered as the result of the jury's hearing the question and answer from Fattore.[3]

The jury ultimately found that Manuel had failed to prove her claims of discrimination, and judgment was

---

[3] The court instructed the jury as follows: "Ladies and gentlemen, when Mr. Fattore was on the stand, he was asked the question, 'Have you ever treated anyone differently at Fleet Management because they are African Americans,' to which he answered, 'No.' I am going to strike that question and that answer from the evidence that you are to consider. The question and the answer are not proven and you are to disregard the question and answer in their entirety." (Tr. Trans. at 230-31.)

entered in favor of the City. Manuel brought this appeal seeking a new trial, arguing that her original trial was flawed because of the two evidentiary rulings by the district court discussed above—leading to the court's erroneous exclusion of evidence relating to other alleged acts of discrimination by the City. We affirm the judgment below.

## ANALYSIS

We review evidentiary rulings by the district court for abuse of discretion. *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 621 (7th Cir. 2003). "The decision whether to admit evidence is a matter peculiarly within the competence of the trial court and will not be reversed absent a clear abuse of discretion." *Simplex, Inc. v. Diversified Energy Sys., Inc.*, 847 F.2d 1290, 1292 (7th Cir. 1988) (quotation omitted).

Manuel argues that the district court's initial decision to exclude evidence of other instances of discrimination was erroneous because it was offered to prove the City's discriminatory intent as well as the pretextual nature of its justifications for failing to promote her. As such, she argues that the evidence was not only relevant (indeed, important) to her case, but was fully admissible under Federal Rule of Evidence 404(b), which provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED. R. EVID. 404(b).

She contends that the continued exclusion of her evidence, even after the City opened the door to the issue during the cross-examination of Fattore, was further error, directing us to the D.C. Circuit's discussion of the

"Opened Door Doctrine" in *Griffin v. Wash. Convention Ctr.*, where that court noted that "[o]nce the door is opened, the other party can get through it otherwise irrelevant evidence to the extent necessary to remove any unfair prejudice which might otherwise have ensued." 142 F.3d 1308, 1312 (D.C. Cir. 1998) (quoting *United States v. Baird*, 29 F.3d 647, 654 (D.C. Cir. 1994)). Manuel argues that while her other-acts evidence was always *relevant* to her case, it became *necessary* once the City improperly inquired into Fattore's treatment of other employees. The district court therefore abused its discretion in excluding that evidence.

Other-acts evidence may be relevant and admissible in a discrimination case to prove, for example, intent or pretext. *See* FED. R. EVID. 404(b); *see also Vance v. S. Bell Tel. & Tel. Co.*, 863 F.2d 1503, 1511 n.5 (11th Cir. 1989) ("The discriminatory intent element can be proven by direct or circumstantial evidence. . . . Thus, the jury properly could have considered evidence of discriminatory acts . . . directed at employees other than the plaintiff, as tending to show the existence of racial animus in the present case." (quotation omitted)).

But under Federal Rule of Evidence 403, otherwise relevant evidence may nonetheless be excluded by the district court "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay." FED. R. EVID. 403. As instructed by Rule 403, the district judge was required to balance those factors before determining whether to allow Manuel to present Sutton's testimony regarding other alleged acts of discrimination by Fattore. In our review of the district court's decision to exclude this evidence, "[t]he relevant inquiry is not how the reviewing judges would have ruled if they had been considering the case in the first place, but rather whether any reasonable person could agree

with the district court." *Rehling v. City of Chicago*, 207 F.3d 1009, 1017 (7th Cir. 2000) (quotation omitted). "The balancing of probative value and prejudice is a highly discretionary assessment, and we accord the district court's decision great deference, only disturbing it if no reasonable person could agree with the ruling." *United States v. Thomas*, 321 F.3d 627, 630 (7th Cir. 2003).

We do not believe that the determination made by the district court, after it had weighed the probative value of the proffered evidence against its potential for unfair prejudice, confusion or delay, was something with which a reasonable person could fairly disagree. Manuel's offer of proof made pursuant to the court's order was rather perfunctory, offering little more than the assertion that Sutton "believes Fattore is a racist because of the way he treats personnel," and promising that this inflammatory characterization would be backed up by Sutton's testimony of "what she observed" in how Fattore treated black employees including Manuel and herself. The offer of proof contains little by way of specific examples of discriminatory actions by Fattore—thereby significantly limiting its probative value for supporting Manuel's case against the City.

In contrast, labeling Fattore a "racist" had the potential of being unfairly prejudicial to the City's case. And the potential for confusing or even misleading the jury by engaging in a series of mini-trials over the other accusations of discrimination by Fattore was significant. If that evidence had been admitted by the district court, the parties would have no doubt argued over the truthfulness of those allegations, necessarily shifting the focus of the trial from Manuel's allegations to Sutton's. It was reasonable for the district judge to have concluded that the risk of unfair prejudice, confusion of the jury, and undue delay outweighed the slight probative value of the other-acts evidence.

The problem of confusion and delay persisted even after the City opened the door to other-acts evidence. It is generally true that when one party opens the door to otherwise inadmissible evidence, the opposing party may be given the opportunity to inquire into those matters itself. *See Young*, 327 F.3d at 627 (citing *United States v. Anifowoshe*, 307 F.3d 643, 649 (7th Cir. 2002) ("This circuit has held on numerous occasions that when a party questions a witness on a subject, even though that subject may not be strictly relevant to the case, the party cannot complain on appeal if the opposing party subsequently introduces evidence on the same subject." (quotations omitted))).

But we have also emphasized that "the Rules of Evidence do not simply evaporate when one party opens the door on an issue." *United States v. Bursey*, 85 F.3d 293, 296 (7th Cir. 1996) (citations omitted). Even after the door has been opened, the district court is required to weigh the need for and value of curative admissibility of previously inadmissible evidence (including whether a limiting instruction to the jury would obviate the need for any curative admissibility) against the potential for undue delay, confusion, and prejudice. Confusion of the jury was an especially pressing problem with respect to Sutton's testimony regarding her earlier EEOC complaint. That complaint had never been formally resolved, ensuring a mini-trial over the issues she had raised in that earlier complaint. The determination made by the district court—"the defense has opened the door, but the door is going to let way too much in. We will be trying cases that . . . have no relationship to this"—was a reasonable one.

To the extent that Manuel argues that her trial was tainted because the jurors heard Fattore assert that he had never treated anyone in his department differently because of their race, and that she was precluded

from challenging that assertion, we think the district court adequately addressed that concern by giving the jury a limiting instruction, telling them to disregard the answer given by Fattore. We assume that jurors follow the instructions they are given. *See United States v. Bell*, 980 F.2d 1095, 1098 (7th Cir. 1992).

## CONCLUSION

Given the relatively slight probative value of the offer of proof submitted by Manuel in support of her efforts to include the testimony of Barbara Sutton, as well as the potential for unfair prejudice, juror confusion, and delay inherent in allowing a number of "mini-trials" over other allegations of discrimination, we do not believe the district court abused its discretion in excluding this other-acts evidence. The judgment is AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*