UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 12, 2006
Decided October 6, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-3999

| | |
|---|---|
| EUGENE BLEDSOE,<br>　　*Plaintiff-Appellant*,<br><br>　　*v.*<br><br>JOHN E. POTTER, Postmaster-<br>General of the United States,<br>　　*Defendant-Appellee*. | Appeal from the United States District<br>Court for the Northern District of<br>Illinois, Eastern Division<br><br>No. 03 C 3890<br><br>Mark R. Filip,<br>*Judge*. |

**ORDER**

Eugene Bledsoe sued the United States Postal Service, his employer, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, alleging that his employer changed his work schedule, drastically reducing his overtime in retaliation for his filing complaints with the Equal Employment Opportunity Commission. Bledsoe now appeals from the district court's decision granting summary judgment to the Postal Service. Because Bledsoe has failed to establish that a genuine issue of material fact exists with respect to his retaliation claim, we affirm the district court's order.

   The undisputed material facts that the district court considered are as follows. Bledsoe, who is an African-American, is employed at the Evanston, Illinois Post Office as a special delivery messenger and clerk.  One of his jobs is to deliver express mail (mail that generally must be delivered within a day after the Post Office receives it).  For many years Bledsoe was scheduled to work Monday through Friday with Saturday and Sunday off.  On this schedule, he frequently worked overtime on both Saturday and Sunday.  But a new postmaster, Mike Kobler, was assigned to the Evanston Post Office in April 2000 with instructions to reduce the office's overtime.  It appeared to Kobler that Bledsoe  was frequently using overtime to accomplish his ordinary workload.  Because the post offices that accept express mail for delivery are usually closed on Sundays, Kobler suspected that Bledsoe had little work to do on Mondays.  Therefore, he had another postal employee, Martin Cain, shadow Bledsoe on a Monday and create a record of how Bledsoe actually spent his time on that day.  The record established that most of Bledsoe's work on Monday consisted of making second attempts to deliver express mail.

   Because second delivery attempts of express mail, unlike first attempts, do not have to be delivered by a certain time, Kobler reasoned that the regular letter carriers could make these second attempts when on their regular rounds.  Once this change was made, Bledsoe would have little to do on Mondays thus Kobler decided to change Bledsoe's days off from Saturday and Sunday to Sunday and Monday. This change was made in July 2000, and Bledsoe says that since then, he has seldom had a chance to work overtime.  Bledsoe asserts that Kobler made this change not to save money but to retaliate against him for complaints he had made to the EEOC.  He cites two EEOC complaints that he filed in 1999 and 1996 but which Kobler learned of in April 2000, three months before the schedule change.

   At the summary judgment stage, the district court refused to consider much of Bledsoe's evidence because he failed to comply with Local Rule 56.1.[1]

---

[1]  This rule states in relevant part:

Each party opposing a motion filed pursuant to Fed. R. Civ. P. 56 shall serve and file (1) any opposing affidavits and other materials referred to in Fed. R. Civ. P. 56; (2) a supporting memorandum of law; and (3) a concise response to the movant's statement [of material facts] that shall contain: (A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and (B) a response to each numbered paragraph in the moving party's statement, including in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (C) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.  Absent prior leave of Court, a respondent to summary judgment motion shall not file more than 40 separately-numbered statements of additional facts.  All material facts set forth in the statement required of the moving party will be

(continued...)

Nonetheless the court found that even if it considered Bledsoe's evidence, he still had not made out a case of retaliation under either the direct or the indirect method. Specifically, it found that Bledsoe could not succeed under the direct method because he had not presented evidence of a causal connection between his complaints and the schedule change. It also determined that he could not succeed under the indirect method because he had failed to present evidence that a similarly situated employee who had not complained was treated more favorably. Finally, the district court ruled that there was no evidence to suggest that the money-saving reason for the schedule change was pretextual.

Initially Bledsoe argues that the district court should have disregarded a number of the Postal Service's exhibits and statements of fact. These arguments appear to be largely frivolous but, even if we were to accept them, Bledsoe still has not met his evidentiary burden on summary judgment. *See Keri v. Bd. of Tr. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986)) (party seeking summary judgment need not support its motion with "affidavits or other similar materials negating opponent's claim;" it need only point out that there is an absence of evidence supporting non-movant's case).

We review a grant of summary judgment de novo. *Tomanovich v. City of Indianapolis and Ind. Dep't of Transp.*, 457 F.3d 656, 662 (7th Cir. Aug. 8, 2006). Summary judgment is appropriate if after construing all the facts in favor of Bledsoe there are no genuine issues of material fact and the Postal Service is entitled to judgment as a matter of law. *Id.*

A plaintiff in a Title VII action can prove retaliation using either the direct or the indirect method. Under the direct method, the plaintiff must establish that he was engaged in protected activity, that he suffered an adverse action, and that the adverse action was causally connected to his protected activity. *Treadwell v. Office of the Ill. Sec'y of State*, 455 F.3d 778, 781 (7th Cir. July 27, 2006). Under the indirect method, initially he must make out a prima facie case that he was engaged in a protected activity, suffered an adverse action, was satisfactorily performing his job at the time he suffered the adverse action, and that a similarly situated employee who was not engaged in protective activity was treated more favorably. *Id.* at 782.

---

[1](...continued)
deemed to be admitted unless controverted by the statement of the opposing party.

Local Rule 56.1(b).

The district court found that Bledsoe had failed to raise an issue of material fact dealing with his prima facie case under the indirect method in that he failed to establish that he was treated less favorably than any similarly situated employee who was not engaged in protected activity. Bledsoe does not challenge this conclusion on appeal. In any case, it is correct because Bledsoe admitted in his response to the Postal Service's statement of undisputed facts that there was no similarly situated employee. (R. 16 at 10, R. 28 at 11.)

As for the direct method, Bledsoe argues that he presented sufficient evidence of a causal connection between his complaints and the schedule change. His brief is not entirely clear about what evidence he is referring to, but he appears to believe that the schedule change happened shortly after Kobler learned of two complaints he had made, one in 1996 and the other in 1999. Kobler changed Bledsoe's schedule in July 2000, about seven months after he filed his second complaint and about four years after he filed his initial complaint. (Since Kobler did not arrive at the Evanston Post Office until April 2000, there was really only a three-month gap between the time Kobler could have learned of these complaints and the time the schedule change occurred).

We have held many times that temporal proximity of this kind is rarely enough to establish a causal connection between protected activity and an adverse employment action. *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002); *see also Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 904–05 (7th Cir. 2005) (one-month gap not sufficient); *Contreras v. Suncast Corp.*, 237 F.3d 756, 765 (7th Cir. 2001) (same). Bledsoe has failed to give any reason as to why we should depart from this general rule for the three-month gap associated with his EEOC complaints.

Bledsoe argues that he submitted other evidence of a causal connection. However, the district court refused to consider the evidence he cites because it concluded that it was not submitted in compliance with Local Rule 56.1. Bledsoe does not develop an argument on appeal that this decision was an abuse of discretion, which is the controlling standard. *Raymond v. Ameritech, Corp.*, 442 F.3d 600, 604 (7th Cir. 2006). But even if we had decided that this excluded evidence was properly before the district court, it would not have been helpful to Bledsoe's case. Initially, Bledsoe refers to an assertion contained in his affidavit that Kobler had postal inspectors arrest Bledsoe for a crime. He argues that this is evidence of Kobler's "retaliatory bias" against him. (Appellant's Br. 26)

Although under Fed. R. Evid. 404(b) other-acts evidence can be relevant to prove motive or intent in a discrimination or retaliation case, *see Manuel v. City of Chicago*, 335 F.3d 592, 596 (7th Cir. 2003); *Molnar v. Booth*, 229 F.3d 593, 603–04

(7th Cir. 2000), the evidence still must contain sufficient detail to be probative, *see Manuel*, 335 F.3d at 596–97 (concluding that lack of specificity in employee's evidence of employer's other acts of racial discrimination limited evidence's probative value). Even assuming that Kobler did have inspectors arrest Bledsoe, Bledsoe does not explain how this arrest was retaliatory, let alone present details sufficient to explain why it means that Kobler's intention in the separate act of changing Bledsoe's work schedule would have been retaliatory.

Bledsoe also refers to his response to the Postal Service's assertion in its statement of undisputed facts that the co-worker Cain conducted a time study of Bledsoe's Monday route. Bledsoe responded that Cain had performed the wrong kind of time study because it was a "Letter Carrier Route evaluation" and Bledsoe was "a Special Delivery Messenger/Clerk, in a separate and distinct craft." (R. 28 at 8.) Bledsoe fails to explain his reasoning as to why he is qualified to say that Cain performed the wrong kind of time study. The excluded response might be relevant to the causation issue if it demonstrated that Kobler knew the proffered reason for the schedule change (the result of the time study) was baseless. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 US 133, 147 (2000) (evidence that employer's asserted reason for action is false permits inference of unlawful motive). But Bledsoe has failed to present any evidence that Kobler was aware that his decision to change Bledsoe's schedule was based on faulty data. Thus, this argument is without merit.

Finally, Bledsoe cites a decision of the Merit Systems Protection Board (attached as an exhibit to his affidavit) ordering the Postal Service to rescind a decision removing him from his job. He asserts that this is evidence that the MSPB was investigating his "wrongful termination," (Appellant's Br. 26), but, as with his claim about the arrest, Bledsoe does not sufficiently develop the facts surrounding this incident to defeat summary judgment. The MSPB decision does not say why the Board was reinstating Bledsoe or why he was removed in the first place, much less declare that anyone at the Postal Service, let alone Kobler, was guilty of retaliation. Therefore, it does not help Bledsoe's case.

We AFFIRM the district court's decision.