**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 7, 2016
Decided August 12, 2016

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-2175

| | |
|---|---|
| PAUL F. MORICONI, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 3:11-cv-03022 |
| | |
| TRAVIS KOESTER, | Thomas P. Schanzle-Haskins, |
| *Defendant-Appellee*. | *Magistrate Judge*. |

**O R D E R**

Paul Moriconi, the owner of a bar near a college campus, was tased four times by police who responded to calls regarding a fight at Moriconi's bar. Moriconi sued several officers for excessive force and false arrest, but on appeal the only claim remaining is his excessive force claim against Deputy Koester (the officer who tased him). Following a jury trial and verdict in favor of Deputy Koester, Moriconi sought a new trial, claiming the verdict was against the manifest weight of the evidence. Moriconi appeals the denial of his motion for a new trial, along with the district court's exclusion, *in limine*, of evidence that Deputy Koester had tased others in the past. We affirm.

## I.

Paul Moriconi owned a bar called Bootleggers near a college campus in Springfield, Illinois. On July 29, 2009, there was a fight at the bar: One woman punched another, knocking her into a brick wall, leaving the victim bleeding and unconscious. Another individual (either a patron or an employee) grabbed the attacker who was trying to flee, and pinned her to the ground while someone called the police.

According to the defendant, the police department dispatched officers with a radio call stating a large fight was in progress, with reports of the use of bats, someone bleeding, and people possibly armed with guns. Sergeant Butcher and Sheriff Deputy Travis Koester responded to the call. Sergeant Butcher arrived first to find two people fighting outside the bar and several others in the area yelling. Sergeant Butcher claims that while he was attempting to break up the fight, Moriconi approached him from behind and began yelling in an intoxicated state, "slurring his words, not making any sense at all." At that point Deputy Koester arrived. While Deputy Koester directed his attention to the duo fighting outside, he also observed Moriconi refusing to comply with Sergeant Butcher's directive to "get back." Viewing Moriconi as a threat, Deputy Koester stepped between Moriconi and Sergeant Butcher and told Moriconi to back up. Moriconi refused and instead told him "I own this fucking bar." Deputy Koester told him a second time to get back and again Moriconi refused and continued to yell. Deputy Koester then took him by the arm to escort him back, but Moriconi pushed Deputy Koester away from him and said, "I'm not going anywhere. I own this fucking bar." Deputy Koester then told him to back up and sit on the ground or he'd be arrested, but Moriconi refused. Deputy Koester then pulled his taser and told Moriconi to back up, turn around, and put his hands behind his back. After another warning, Deputy Koester tased Moriconi. Deputy Koester then told him to roll over and put his hands behind his back, but Moriconi did not comply. Instead he attempted to swipe off the wires of the taser. In total, Deputy Koester tased Moriconi four times, and stopped only when another deputy arrived to assist. The two officers were then able to pin Moriconi to the ground and cuff him.

Moriconi tells a vastly different story, claiming that he was merely trying to explain to the officers what had happened, and that the man holding the woman on the ground was helping detain the perpetrator. Moriconi further explained that the officer ordered him to put his hands up, but that he couldn't comply with the directive because he could not raise one of his arms due to an injury he had suffered from a motorcycle accident. Moriconi also claimed that, for the same reason, he couldn't comply with the

officer's order to put his hands behind his back when he was being tased. Moriconi claimed he suffered additional physical problems as a result of being tased and that the use of the taser four times was excessive force. He sued Deputy Koester for excessive force. (Moriconi presented additional claims against additional defendants, but those claims and defendants are not at issue on appeal.)

A jury trial proceeded, presided over by a magistrate judge by consent of the parties. Prior to trial the magistrate judge granted Deputy Koester's motion *in limine* to bar evidence that he had used his taser in other circumstances. Following trial, the jury returned a verdict in favor of Deputy Koester. Moriconi filed a motion for a new trial and after that motion was denied, he filed a motion for reconsideration which was also denied. Moriconi now appeals.

II.

On appeal, Moriconi first argues that the district court erred in granting Deputy Koester's motion *in limine*, which barred him from presenting evidence concerning other occasions in which Deputy Koester used his taser. The magistrate judge held that such evidence was inadmissible under Rule 404(b). This court reviews evidentiary rulings for an "abuse of discretion." *Manuel v. City of Chicago,* 335 F.3d 592, 595 (7th Cir. 2003). And in reviewing the determination of the admissibility of evidence under Rule 404(b), this court "must accord great deference to the [trial] court's assessments because of the judge's first-hand exposure to the evidence and because of the judge's familiarity with the case and ability to gauge the impact of evidence in the context of the proceeding." *Treece v. Hochstetler*, 213 F.3d 360, 363 (7th Cir. 2000).

Rule 404(b) provides "evidence of other crimes, wrongs, or acts is inadmissible to show propensity, but may be admissible for other purposes, 'such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, ... absence of mistake or accident,' or other relevant, nonpropensity purposes." *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 644–45 (7th Cir. 2011) (quoting Fed. R. Evid. 404(b)). In this case, Moriconi asserts the evidence of past tasing incidents is relevant to establish intent and motive, but he does not explain how. Nor could he because "[t]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Under these circumstances, the district court did not abuse its discretion in barring evidence of other occasions in which Deputy Koester used his taser.

Moriconi also claims that the jury's verdict was against the manifest weight of the evidence and that the district court abused its discretion by denying his motion for a new trial. A plaintiff challenging a jury verdict faces "a particularly heavy burden" because a court will set aside a verdict on this basis "only if no rational jury could have rendered the verdict." *Moore ex rel. Est. of Grady v. Tuelja*, 546 F.3d 423, 427 (7th Cir. 2008). And this court "must view the evidence in the light most favorable to the prevailing party, leaving issues of credibility and weight of the evidence to the jury." *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 444–45 (7th Cir. 2009).

In this case, Moriconi claimed Deputy Koester used excessive force in arresting him. To succeed on his excessive force claim, Moriconi needed to show that Deputy Koester's actions were objectively unreasonable in light of the facts and circumstances. "This inquiry requires an examination of the 'totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing government[al] interests at stake.'" *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010) (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000)). In evaluating the "nature and extent of the force," factors considered include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

After hearing the evidence, which included, among other things, the testimony of Moriconi, Deputy Koester, and Sergeant Butcher, the jury ruled in favor of Deputy Koester. Viewing the evidence in the light most favorable to Deputy Koester, Moriconi cannot establish that the jury's verdict was against the manifest weight of the evidence. While Moriconi claimed that he was merely trying to explain the situation to the officers and was unable physically to respond to Deputy Koester's order to raise his hand, Deputy Koester contradicted his claims. Deputy Koester testified that he never ordered Moriconi to raise his hands and that he only arrested Moriconi after Moriconi refused to back up and then pushed him. The jury was entitled to believe Deputy Koester's version of events. Based on Deputy Koester and Sergeant Butcher's testimony, the jury could have reasonably concluded that Deputy Koester had grounds to arrest Moriconi after Moriconi pushed him, and that when Moriconi refused to obey his commands, the use of the taser was appropriate. In response, Moriconi stresses that Deputy Koester tased him four times. But the jury also heard evidence that after Deputy Koester tased Moriconi the first time, instead of obeying his directive Moriconi attempted to remove the taser leads from his body. Additionally, the jury heard testimony that Moriconi

continued to ignore Deputy Koester's directives, leading Deputy Koester to use the taser two more times. Another officer then arrived on the scene and together they were able to handcuff Moriconi. The jury heard evidence that the scene was chaotic and that dispatch had indicated that there were baseball bats and possibly weapons at the scene. They also learned that Moriconi had been drinking and appeared under the influence of alcohol. Given all of these circumstances, a reasonable jury could conclude that Deputy Koester acted reasonably in exerting the amount of force he did in order to gain control over Moriconi and arrest him. Accordingly, the district court did not abuse its discretion in denying Moriconi's motion for a new trial. *See Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) (upholding the jury's verdict in favor of the defendant on the plaintiff's excessive force claim because the jury could reasonably conclude that officer did not use excessive force in deploying a taser three times).

III.

Deputy Koester undisputedly tased the owner of Bootleggers, Paul Moriconi, four times. The parties don't agree on much else, but since a jury heard all of the (admissible) evidence and ruled in favor of Deputy Koester, we must view the evidence in the light most favorable to Deputy Koester. Viewing the evidence in that light, the jury acted reasonably in finding in Deputy Koester's favor on Moriconi's excessive force claim. Deputy Koester arrived at a chaotic situation and found another officer attempting to break up a fight and trying to deal with Moriconi's interruptions. Those interruptions became interference when Moriconi refused to obey Deputy Koester's command to back up and sit down. And Deputy Koester had probable cause to arrest Moriconi when Moriconi pushed him rather than follow his directive. Moriconi's failure to follow subsequent commands, and his attempts to remove the taser leads, justified Deputy Koester's continued use of the taser until back-up officers arrived. The jury's verdict stands and we AFFIRM.